**UNITED STATES of America,**

v.

**Leroy KINEBREW and Russell Middleton, Defendants.**

CR–80–00325.

United States District Court, E. D. New York.

Oct. 7, 1980.

Edward R. Korman, U. S. Atty., Eastern District of New York by Charles E. Rose, Asst. U. S. Atty., Brooklyn, N. Y., for United States.

Sherwood Allen Salvan, New York City, for defendant Middleton.

Robert Roxby, New York City, for defendant Kinebrew.

SIFTON, District Judge.

This is a motion by defendant Middleton to suppress physical evidence obtained by means of a search of a car in which Mr. Middleton was located prior to his arrest. The motion has been joined in orally by defendant Kinebrew, and a hearing was held at which evidence was presented by the Government with respect to the search of the car. A motion by defendant Middleton to suppress statements taken from him at the time of his arrest has been answered by a statement by the Government that it does not intend to use any statements by defendant Middleton at the time of trial. Accordingly, the motion has been withdrawn without prejudice to its renewal at the time of trial, if the statements are offered at that time. For the reasons set forth below, defendants' motion to suppress physical evidence must be denied.

At the outset, it bears noting that defendants have not established their standing to invoke the exclusionary rule. Even if defendants were "legitimately on the premises" (and there is reason to doubt even this conclusion, since a Motor Vehicle Department check of the license plate number which appeared on the car showed the number not to be currently registered to any owner), defendants did not show, either by affidavit or otherwise, that they owned,[1] or had rented or borrowed the vehicle, or otherwise developed a "legitimate expectation of privacy" with regard to the vehicle's interior. Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). The fact that defendants are charged with possession of items taken from the car no longer entitles them to "automatic standing" to contest the validity of the search. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

The only statement made by either defendant on the basis on which standing might be claimed is contained in an attorney's affidavit asserting, what is not disputed, that the automobile searched was the one in which Mr. Middleton was travelling with his co-defendant when arrested. This statement is insufficient to establish standing to be heard with regard to a motion to suppress items removed from the car.

However, even had a more substantial showing with regard to standing been made, defendants' motion would have to be denied. Defendants were arrested on April 29, 1980, shortly following their entry into the parked automobile thereafter searched. The arrest was based on ample, probable

---

1. The affidavit in support of the search warrant recites a statement by defendant Middleton at the time of arrest that he owned the car. How- ever, Middleton has neither repeated nor relied on that statement in support of this motion.

cause, since defendants fitted the description given by three eyewitnesses to three illegal entries to three separately located postal service relay boxes and since the car to which they returned had been identified by the witnesses by license plate and description as the car used on the earlier occasions. To be sure, two of the three callers were anonymous; one of the witnesses thought the vehicle might be either blue or gray; it turned out to be gray. One of the three eyewitnesses could only give a partial license plate consisting of the first three of the six figures in the plate. These factors are not sufficient to destroy the agents' probable cause to believe the individuals they arrested were involved in the earlier illegal entries.

The post office inspectors were aware that a United States postal key, known as an "arrow" key, capable of opening relay boxes in the Brooklyn Post Office district, had been stolen from a letter carrier in September 1979.

On April 21, 1980, one of the officers had interviewed an eyewitness, who furnished his name and address, and who reported that a relay box had been opened with a key by a male Black at the corner of Nostrand Avenue and Winthrop Street, opposite the supermarket of which the eyewitness was the manager. The supermarket manager identified the car in which the individual left, by the license plate 815–CTR, as gray, and as either an Oldsmobile or a Buick. A Motor Vehicle Department check of this license plate determined that it was not registered to any vehicle.

In the morning of April 29, 1980, the arresting officers received a radio call from their base indicating that an anonymous caller had identified two male Blacks, one wearing a green eye shade, as having opened a relay box at Nostrand Avenue and Eastern Parkway with a key and left in a gray Oldsmobile with a license plate which the witness could describe only as commencing with the numbers 815. After the arresting officers responded to this location, they received within 20 minutes a second radio call from their base indicating that a

caller had seen two male Blacks opening relay boxes in the area of 25–45 Linden Boulevard, a location in a different postal district, presumably requiring a different arrow key. When the arresting agents responded to this location, they located the gray Oldsmobile with a license plate 815–CTR within 50 feet of the relay box. As soon as they saw it, they set up surveillance and determined not to approach the car lest the criminals be in the neighborhood, see them, and flee.

Within 20 minutes, two Black males appeared, one wearing a green visor of the type identified by the first caller as having been worn by one of the men observed at the Nostrand Avenue and Eastern Parkway location. One of the two men was carrying what was described at the hearing as a tote bag or airline-type bag.

On all of these circumstances, there was probable cause to believe that the two men approaching the vehicle were responsible for the illegal opening of the relay box at Nostrand Avenue and Eastern Parkway, if not for opening the relay box at Nostrand and Winthrop. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). At least one of the eyewitnesses unquestionably qualifies as the citizen-informant referred to in *United States v. Burke*, 517 F.2d 377, 380 (2d Cir. 1975). In all events, the circumstances, including the coincidence of three eyewitness reports from three persons, provide adequate reliability for the information on which the agents acted. *See McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir. 1969).

Incident to this arrest, an arrow key was recovered from the pocket of defendant Kinebrew, and mail was recovered from defendant Middleton's inside coat pocket. These two seizures were unquestionably proper as the result of a search incident to the arrest and are not complained of in this motion.

■ In addition, a letter was discovered on the right, front seat of the vehicle, and a postal service mail bag was observed on the floor of the front seat of the car. Both of these items, constituting what were in all

likelihood part of the thieves' loot or an instrument of the crime, were inadvertently observed in plain view by the agents at the time the defendants were lawfully ordered out of the car and, therefore, lawfully seized. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–69, 91 S.Ct. 2022, 2037, 2040, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. Berenguer*, 562 F.2d 206, 210 (2d Cir. 1977).

Finally, a government check was recovered from a magazine taken from inside the tote bag. The tote bag, which had been carried by Kinebrew into the car, was left by him in the car when he emerged in response to the officers' direction and was arrested. The car was then driven and towed by postal service agents to the post office after it broke down. The agent driving the car removed both the tote bag and the mail bag, which he had earlier observed in plain view, from the car when he left it. The removal of the mail bag was justified, as noted above, since it was immediately recognized by the agent as in all likelihood either a stolen government mail bag or an instrument of the crime and, in all events, incriminating. *United States v. Diaz*, 577 F.2d 821, 824 (2d Cir. 1978). The contents of the mail bag—a pair of pliers—was also properly seized since the presence of the pliers was perceptible by touch through the cloth bag and, hence, in "plain view" itself and since the incriminating nature of the bag, in the circumstances, justified examining its contents, *see United States v. Diaz, supra* at 524; *cf. United States v. Berenguer, supra.* The tote bag was properly removed because it was clearly personal property of Kinebrew of a type which would be foolhardy to leave, even in a locked car, in the basement of the General Post Office. Police may "secure" luggage preparatory to obtaining a warrant to search it, *United States v. Painter*, 480 F.Supp. 282 (W.D.Mo.1979). Clearly, they

can "secure" luggage as they secured the car (a procedure not complained of here) to avoid its loss to a defendant. When this tote bag was brought to where defendant Kinebrew was located, he asked for a magazine from it. At this point, the magazine was appropriately searched as an incident of Mr. Kinebrew's arrest and the fact that he was in custody. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *cf. United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979); *United States v. Hernandez-Rojas*, 470 F.2d 1212 (E.D.N.Y.1979). Whether an additional search without a warrant of Mr. Kinebrew's tote bag which produced several more allegedly stolen letters was proper need not be determined, since the Government has decided not to introduce this apparently cumulative evidence at trial.[2] *Cf. Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979); *People v. Minjares*, 24 Cal.3d 410, 153 Cal.Rptr. 224, 591 P.2d 514 (1979), *cert. denied*, 444 U.S. 887, 100 S.Ct. 181, 62 L.Ed.2d 117 (1979) (tote bag); *United States v. Venizelos*, 495 F.Supp. 1277 (S.D. N.Y.1980); and *compare United States v. Cueto*, 611 F.2d 1056 (5th Cir. 1980) *with United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979).

Defendants also question the search of the car pursuant to a search warrant obtained after it was driven and towed to the Post Office. The ground for defendants' motion is that the United States Magistrate lacked probable cause to issue the warrant. The affidavit supporting the issuance of the warrant contains, however, ample basis for the magistrate's conclusion since, in addition to the facts set forth above as justifying the agents' arrest, the affidavit recites statements by defendant Kinebrew stating that a shotgun was concealed in the car's trunk.[3]

---

2. The contents of the tote bag are not referred to in the affidavit in support of the search warrant. Nor is any claim made that any illegality in any of the seizures tainted the search of the car.

3. Defendants have not argued that the search warrant was tainted by any of the seizures and statements which are referred to in the affidavit in support of the application for its issuance. Indeed, such an argument is quite inconsistent with defendants having withdrawn

For the reasons above stated, defendants' motion to suppress must be denied in its entirety.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

their motion to suppress statements upon the Government's representation that the statements could not be used at trial. However, since there appears no obvious, rational explanation for the conduct of defense counsel and since their course of conduct, if uncorrected, might raise questions as to whether defendants have been afforded competent counsel, defendants may renew their motion to suppress prior to the date fixed for trial.