**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Glenn PRICHARD and Brian De Palma, Defendants-Appellants.**

Nos. 79–2280, 79–2281.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 28, 1981.

Decided April 1, 1981.

Rehearing Denied May 11, 1981.

R. E. Thompson, U. S. Atty., Albuquerque, N. M. (Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., with him on brief), for plaintiff-appellee.

Robert C. Hill, Miami, Fla. (Max P. Engel, Miami, Fla., with him on brief), of Engel, Aronson, Fried & Cohn, Miami, Fla., for defendants-appellants.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

The central issue in this appeal is whether the search of a Ford Bronco, which resulted in the seizure of 86 pounds of cocaine having an estimated street value of $20,-000,000, was lawful.

William Glenn Prichard and Brian David De Palma were charged by indictment with possession with an intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prior to trial, the defendants filed a motion to suppress wherein they sought to suppress, among other things, the use at trial of all physical evidence, including contraband, seized by New Mexico state police in a search of the Ford Bronco. After a five-day evidentiary hearing, the trial court denied the motion to suppress. A jury convicted both defendants and each appeals.

As indicated, the hearing on the motion to suppress was an extended one. The transcript of that hearing discloses that on July 29, 1979, at about noon, two New Mexico state police officers established a roadblock on Interstate Highway 40 approximately eight miles east of Moriarty, New Mexico. The stated purpose of the roadblock was to conduct a routine driver's license and car registration check. The officers candidly conceded, however, that if they observed indicia of other crimes during their check of drivers' licenses and vehicle registrations, they intended to enforce the law. The roadblock was conducted with the knowledge and permission of the officers' supervisor. The officers testified that it was their intent to stop all westbound vehicles, except for semi-trucks, which had already been stopped at a port of entry. When the cars began to "pile up," however, the officers would wave all of the stopped cars through in order to prevent the situation from becoming unduly hazardous. One officer estimated that they would allow no more than ten cars to back up before they waved all of the stopped cars on through. After they cleared the area, the officers would begin to stop cars again.

It was in this setting that at about two o'clock on the afternoon of July 29, 1979, Officer Jeff Faison, one of the New Mexico state police officers, stopped a 1979 Ford Bronco. Prichard was driving the Bronco and De Palma was the only passenger. On request, Prichard produced a valid California driver's license and a temporary registration of the vehicle in California in the name of "R. English." Prichard told Officer Faison that he had borrowed the car to go to a wedding in Memphis, Tennessee. Faison then attempted to make a NCIC computer check in order to determine whether the vehicle had been stolen, but the computer was out of order. Faison asked for the phone number and address of the registered owner, R. English, but neither Prichard nor De Palma gave him any information. Faison then requested, and received, permission to look in the glove com-

partment of the Bronco for identification. Inside the glove compartment, Faison found a Florida temporary transportation permit, an insurance card, and a warranty plan all made out to a Jack Taylor of Lake Worth, Florida, and a Florida Highway Patrol Inspection form made out to Friendly Ford. Faison also noticed a California license plate lying behind the passenger seat and detected a pungent odor emanating from the rear of the vehicle. Faison asked Prichard what the smell was, and, according to Faison, Prichard "flinched."

Faison then directed the two to stand away from the vehicle, and he called for assistance from his fellow officer. According to the officers, they asked for, and received, consent to search the vehicle. Faison then got into the vehicle and climbed over the seat into the back of the Bronco. There he found a can of rose-scented odorant which had tipped over and formed a puddle. He also noticed several screws laying on the floor carpet and a loose side panel. Faison removed the loose panel and located ten bricks of what he initially believed to be marijuana. A field test, however, revealed that the substance was cocaine. A subsequent search of the Bronco, after it had been towed to a garage, disclosed nine additional bricks of cocaine. In searching the vehicle at the garage, Faison also discovered: (1) a roll of masking tape in an ice chest in the rear of the Bronco, the torn end of which matched the masking tape wrapping on one package of cocaine; (2) a baggie of cocaine, under the carpet of the Bronco on the front passenger side, which matched the cocaine in the nineteen bricks; and (3) a strainer screen, in the console between the seats, which is used to "fluff" cocaine in preparation for use.

It is defense counsel's position that the motion to suppress the use at trial of the physical evidence taken from the car, including the nineteen bricks of cocaine, should have been granted on any one of several grounds. In this regard, the defendants' primary argument is that the roadblock stop of the Bronco violated their Fourth Amendment rights and that the

subsequent search of the vehicle was tainted by the illegal stop. The first issue, then, is whether the initial stop of the Bronco was lawful.

Counsel for the defendants relies heavily on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), in support of the argument that the roadblock stop of the Bronco was unconstitutional. In our view, *Prouse* does not support the defendants' position. Indeed, *Prouse* supports the conclusion that the roadblock stop of the Bronco was lawful.

It is true that in *Prouse* the Supreme Court held that absent at least an articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not properly registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. 440 U.S. at 663, 99 S.Ct. at 1401. The court, however, also expressed the following caveat to the general rule above set forth:

> This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers. *Id.* (emphasis added). (footnote omitted).

In our view, the roadblock stop of the Ford Bronco does not run afoul of the rule of *Prouse*. While this may not have been a "100% roadblock" of the type referred to in *Prouse*, it is nonetheless a long way from the selective, single car stop denounced in *Prouse*. In the instant case, the New Mexico state police were attempting to stop all westbound traffic on an interstate highway, insofar as was humanly pos-

sible. The decision not to stop trucks was reasonable under the circumstances, because, presumably, they had all been stopped at a port of entry. The purpose of the roadblock, i. e., to check drivers' licenses and car registrations, was a legitimate one. If, in the process of so doing, the officers saw evidence of other crimes, they had the right to take reasonable investigative steps and were not required to close their eyes. *See United States v. Merryman*, 630 F.2d 780, 782–85 (10th Cir. 1980). Furthermore, allowing all the stopped cars through when traffic became congested was also reasonable and, in our view, non-violative of the rule of *Prouse*. In sum, the roadblock stop of the Ford Bronco was, under the described circumstances, constitutional.

In light of our determination that the initial stop of the Bronco was valid, we find the fruit of the poisonous tree doctrine inapplicable. We must, therefore, determine the propriety of the search of the Bronco independent of the initial stop and momentary detention for the purpose of checking the driver's license and registration papers. In this connection, the trial court found, after an extensive evidentiary hearing, that the defendants had voluntarily given the state police their consent to search the vehicle. Not surprisingly, the evidence on the issue of consent was in conflict, but the trial court chose to believe the officers' version of events. To determine and assess the credibility of witnesses is a prerogative of a trial judge, and not a reviewing court, which never heard nor saw the witnesses. *United States v. Petersen*, 611 F.2d 1313, 1317 (10th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980); *United States v. Gibbons*, 607 F.2d 1320, 1329 (10th Cir. 1979).

The facts of the instant case bearing on the consent issue have close resemblance to the facts of *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). There the Supreme Court declared that whether a particular consent was voluntary, or not, is to be determined by the totality of *all* the circumstances. As in *Mendenhall*, the evidence here is plainly adequate to support the trial court's finding that the defendants voluntarily consented to the search.

At the hearing on the motion to suppress, the Government admitted that the search of the Bronco was without the benefit of a search warrant, but insisted that the defendants first prove standing. In an effort to establish standing, the defendants took the witness stand, and in response to certain questions, the defendants attempted to plead the Fifth Amendment. The trial court instructed the defendants to answer the questions or be faced with contempt proceedings. The claim is now made that such violated their Fifth Amendment right against self-incrimination. We fail to see how any possible error in this regard was prejudicial. The statements made by the defendants at the hearing on the motion to suppress were not used against them at trial. Nor did any of their answers serve as a lead for developing other evidence. Counsel asserts that statements of the defendants made at the hearing on the motion to suppress and heard by the judge may have influenced his judgment in denying defendants' motion for acquittal under Fed. R.Crim.P. 29. Such an assertion is irrelevant. On appeal, the reviewing court makes its own independent judgment as to the sufficiency of the evidence, based on the record as made in the trial court. Counsel also suggests that the trial court may have imposed a heavier sentence than he otherwise would have because of what he learned at the hearing on the motion to suppress. There is nothing in the record, however, to support such a suggestion. If counsel is of the view that the sentences imposed were too harsh, he may, after our mandate has issued, file with the trial court a motion to reduce sentence under Fed.R.Crim.P. 35.

As alluded to above, the trial court denied the defendants' motion for judgment of acquittal and, on appeal, counsel argues that the evidence is legally insufficient to support the jury's verdicts. We view the evidence differently. The defendants were the sole occupants of a vehicle that was being driven cross-country. In the console

between the front seats was a strainer screen used to "fluff" cocaine. Under the carpet on the passenger's side where De Palma was seated was a baggie of cocaine which matched the nineteen bricks of cocaine hidden in the rear of the vehicle. Additionally, the torn end of a roll of masking tape located in an ice chest in the rear of the Bronco matched the masking tape wrapping on one of the packages of cocaine. The totality of the evidence certainly permits the jury to infer that the defendants *knowingly* possessed cocaine, and the great quantity of cocaine found in the Bronco permitted the additional inference that the defendants intended to sell and distribute this drug. *See United States v. Stricklin,* 534 F.2d 1386, 1390 (10th Cir.), *cert. denied,* 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976).

The defendants also complain that the instruction on aiding and abetting was confusing and, in effect, directed the jury to convict Prichard as a principal. We have examined the instructions, and believe them to be adequate. The jury was, of course instructed that they could not convict either defendant unless their individual guilt was established beyond a reasonable doubt.

■ Finally, counsel asserts that certain error occurred during the trial that denied the defendants a fair and impartial trial. Specifically, it is claimed that the prosecutor made an improper closing argument in pointing out to the jury that defense counsel had failed to establish that which in his opening statement he said he would prove. Such comment, under the circumstances, was not comment on the defendants' failure to testify. When defense counsel, by way of opening statement, advises a jury of what his evidence will be, he invites comment by the prosecutor in closing argument that defense counsel failed to prove that which he said he would. *United States v. Broadhead,* 413 F.2d 1351 (7th Cir. 1969), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970). *See also United States v. Merryman,* 10 Cir., 630 F.2d 780, 788. Other alleged instances of trial irregularities have been examined and none is of any moment.

Judgments affirmed.