UNITED STATES of America, Plaintiff,

v.

Fernando OBREGON, Defendant.

No. CR 83–136.

United States District Court,
D. New Mexico.

Aug. 31, 1983.

William L. Lutz, U.S. Atty., Larry Gomez, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff.

Nancy Hollander, Freedman Boyd & Daniels, Albuquerque, N.M., Roger Cossack, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

BALDOCK, District Judge.

THIS MATTER is presently before the court on defendant's Motion to Suppress Physical Evidence and Motion to Suppress Statements. After considering the facts brought out at the evidentiary hearing held August 15, 1983, and the accompanying memoranda of the parties, the court finds that both motions are not well taken and should be denied.

The defendant was charged by indictment with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and interstate travel or transportation in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952(a)(3). Defendant now seeks to suppress physical evidence and statements related to those charges.

On July 2, 1983, Officer Jeff Faison of the New Mexico State Police was supervising a routine traffic check with a roadblock located on the interstate highway near Moriarity, New Mexico. All westbound vehicles were stopped, except for semi-trucks which previously had passed through a port of entry. When the roadblock began to "pile up" with cars, Officer Faison would wave oncoming traffic through for safety reasons. The roadblock would reopen to stop oncoming traffic, once the congestion had cleared.

The purpose of the roadblock was to check for current driver's licenses and car registrations. The roadblock personnel also checked for faded registration stickers affixed to New Mexico license plates, for tampered license plates and for expired plates. Another purpose of the roadblock was to train two members of the New Mexico Mounted Patrol, an auxiliary of the State Police.

The defendant was stopped on the roadblock by Officer Faison. The defendant was driving a rented 1983 Mercury with expired out-of-state plates. The officer asked the defendant for the car's registration and the rental agreement so that the officer could check on the status of the car. The officer discovered that the defendant's name did not appear on the rental agreement or on any other document, either as the renter or an authorized driver. The officer testified that he thought that it was possible the car might be stolen, although he did not run an NCIC check on the car.

The defendant admitted that his name was not on the rental agreement. He testified that a third party, his roommate of several months in Miami, Florida, had rented the car for him as a birthday present so that the defendant could drive to California for a vacation. Defendant also testified that he could not have rented the car himself because he lacked credit cards. According to the defendant, he drove the third party to Atlanta, Georgia. The third party then was to fly to California, where he was to rejoin the defendant.

The officer next asked for and obtained oral permission from the defendant to search the car. Within a few moments, the officer obtained written consent to search the car. The officer then searched the inside of the car. A black garment bag located in the back seat of the car contained a brown box. The brown box contained a substance later identified as cocaine. The defendant told the officer that the brown box belonged to someone else.

The officer then placed the defendant under arrest. The defendant was advised of his *Miranda* rights orally and in writing after being placed in custody. He also executed a form acknowledging and waiving those rights.

A. Motion to Suppress Physical Evidence.

1. Standing.

 Defendant must have standing if he is to challenge the stopping of the car and the later search on fourth amendment grounds. The standing inquiry reflects the personal nature of fourth amendment rights—those rights may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425–26, 58 L.Ed.2d

387 (1978). The current test for determining standing considers not only whether the defendant had a possessory interest in the items seized, but also whether the defendant had a legitimate expectation of privacy in the area searched. *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2553–54, 65 L.Ed.2d 619 (1980).

■ A reasonable expectation of privacy is determined in light of the facts and circumstances of each case. *Rakas v. Illinois*, 439 U.S. 128, 152, 99 S.Ct. 421, 435, 58 L.Ed.2d 387 (1978) (Powell, J. concurring). Relevant factors in the inquiry include the "precautions customarily taken by those seeking privacy," the way a location is used, the history of the fourth amendment and society's recognition of permissible conduct in particular places as reflected by property rights. *Id.* at 152–53, 99 S.Ct. at 435.

■ This court begins with the proposition, that as a matter of law, there is a much lower expectation of privacy associated with a car than with one's person or a personal residence. The Supreme Court has explained the reasoning supporting this proposition.

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*Cardwell v. Lewis*, 417 U.S. 583 at 590, 94 S.Ct. 2464 at 2469, 41 L.Ed.2d 325 (1974). There are additional reasons for this diminished expectation of privacy.

> "All states require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways." *Cady v. Dombrowski*, 413 U.S. 433 at 441 [93 S.Ct. 2523 at 2528, 37 L.Ed.2d 706] (1973). Automobiles periodically undergo official inspec-

tion, and they are often taken into police custody in the interest of public safety. *South Dakota v. Opperman*, 428 U.S. 364 at 368 [96 S.Ct. 3092 at 3096, 49 L.Ed.2d 1000] (1976).

*United States v. Chadwick*, 433 U.S. 1 at 12–13, 97 S.Ct. 2476 at 2484, 53 L.Ed.2d 538 (1971). While cars are within the scope of the fourth amendment, the privacy that a person reasonably may expect in their use is limited.

If an owner-driver of a car has a reduced expectation of privacy in a car, passengers have an even lesser expectation. In *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978), the Court determined that passengers in a car "they neither owned nor leased" lacked standing to challenge a search of the car because they had no legitimate expectation of privacy in the searched areas.

■ This court is unable to say that the defendant in this case had a reasonable expectation of privacy in the rented car after applying the above principles. The defendant was unable to demonstrate to the court that he had a legitimate expectation of privacy that would allow him to challenge any search or seizure of the car.

Defendant had the keys to the car and may have had permission from the renter of the car to use it, but this is not determinative of the standing inquiry in this case. Defendant was driving a rented vehicle and was not named on the rental agreement or any other documents, either as the renter or as an authorized driver. Defendant made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately. Indeed, the defendant testified that he waited outside the Miami airport while an unrelated third party arranged the rental of the car. Defendant's relationship to the rented car is too attenuated to support a claim of standing.

The court has considered the cases cited by the defendant which supposedly indicate a contrary result. But these cases do not address a situation where a defendant

claims standing to challenge a search or seizure of a car rented by another.

In *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980), the driver of a car borrowed from a friend had fourth amendment standing. That case, however, is distinguishable factually from the case before the court because nothing indicates that the friend had rented the car; the inference is that the friend owned the car and lent it to the defendant. The relationship between the car, the lender, and the borrower is more direct in *Portillo* than in this case.

The same is true of *United States v. Ochs*, 595 F.2d 1247, 1253 (2d Cir.1979). The defendant had fourth amendment standing because the record owner of the car let the defendant use the car whenever the defendant wanted to. No rental car company or rental agreement was involved.

The dicta in *United States v. Kinebrew*, 507 F.Supp. 17, 18 (E.D.N.Y.1980) to the effect that owners, renters or borrowers of vehicles develop legitimate expectations of privacy regarding the vehicle's interior, does not say that a borrower of a car owned by a rental car company and rented by a third party has a legitimate expectation of privacy in that car for purposes of fourth amendment standing.

Finally, *United States v. Burnett*, 493 F.Supp. 948, 952 (N.D.N.Y.1980), aff'd, 652 F.2d 55 (2d Cir.1981), involved fourth amendment standing where one defendant was the lessee of a van and the other defendant had the lessee's written permission to use the van. Although the district court determined that both defendants had standing to challenge a search of the van it did not elaborate on the leasing arrangement. The case before the court is more developed factually and mandates an opposite result. Moreover, given that the lessee in *Burnett* executed a written document granting the borrower permission to use the van, the borrower may have had more of an expectation of privacy than if he lacked written permission. In any event, the defendant in the case before the court introduced no evidence showing that he had written permission and, therefore,

was entitled to a greater expectation of privacy in the rented car.

2. Search and seizure.

█ Defendant would not prevail on the merits of the fourth amendment claim, even if this court were to determine that he had standing. This is because the evidence adduced at the pretrial hearing places this case precisely within the controlling law of *United States v. Prichard*, 645 F.2d 854 (10th Cir.1981), *cert. denied*, 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981). The Tenth Circuit in *Prichard* held that the same type of roadblock by the New Mexico State Police on the same stretch of road was constitutional. 645 F.2d at 856. The Tenth Circuit then sustained the trial court's determination that the defendants voluntarily had consented to a search of their vehicle. After carefully reviewing the evidence brought out at the pretrial suppression hearing, this court would find that the defendant in the case before the court voluntarily consented to a search of the rented car. All physical evidence obtained from the search, therefore, would not be suppressed.

█ There is a seizure within the meaning of the fourth amendment when a law enforcement officer stops a driver, even for the purpose of checking for a driver's license and car registration. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979). A discretionary spot check of a driver and his car just to examine a driver's license and car registration is contrary to the fourth amendment, unless there is an "articulable and reasonable suspicion" that a driver is not licensed or that a car is not registered or that either the car or an occupant is otherwise subject to seizure for violating the law. *Id.* at 663, 99 S.Ct. at 1401. State police, however, may attempt to stop all oncoming traffic to check driver's licenses and car registrations and not violate the fourth amendment. *United States v. Prichard*, 645 F.2d 854, 856 (10th Cir.1981).

This court finds that the stop of the defendant was part of a lawful roadblock designed to check driver's licenses and car registrations of all oncoming traffic, insofar as safely possible. No evidence suggests that the defendant was singled out from the mass of traffic and then stopped. Nor does the evidence suggest that requiring the defendant to produce a registration and rental agreement for the rental car was anything but appropriate, given the circumstances.

Given the lawfulness of the initial stop, the court concludes that the defendant knowingly and voluntarily consented to the search of the rental car. Defendant orally consented to the search and moments later executed a document entitled "Form For Consent to Search." That form authorized the state police officer to search the car, its luggage and contents. The testimony and the surrounding circumstances, *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973), lead to the firm conclusion that the defendant voluntarily consented to the search in question.

B. Motion to Suppress Statements.

■ In view of this court's disposition of the defendant's motion to suppress, defendant's claim that any statements given to law enforcement officers were the result of an unlawful search is without merit. Nor does the court find an illegal arrest. The defendant received oral *Miranda* warnings once the contraband was discovered and also executed a form entitled "Interrogation; Advice of Rights." The evidence brought out at the suppression hearing convinces this court that the defendant was aware fully of his *Miranda* rights and made an effective waiver thereof.

WHEREFORE,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Suppress Physical Evidence and Motion to Suppress Statements be, and the same hereby are, denied.