**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Othel BORUFF,
Defendant–Appellant.**

**No. 89–1903
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

July 31, 1990.

Rehearing Denied Sept. 11, 1990.

Robert W. Ritchie, Ritchie, Fels & Dillard, Knoxville, Tenn., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., James Blankenship, Asst. U.S. Atty., Austin, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOLLY and JONES, Circuit Judges.

CLARK, Chief Judge:

## I.  Introduction.

James O. Boruff (Boruff) appeals his conviction on conspiracy to possess and possession of more than 50 kilograms of marijuana with intent to distribute. 21 U.S.C. §§ 841(a)(1), 846. We affirm.

## II.  Facts.

### A.  Background.

Boruff purchased a new Chevrolet pickup truck to use in smuggling marijuana from the Mexican border into Texas. Russell B. Taylor (Taylor), a co-conspirator, accompanied Boruff to make the purchase. Boruff selected a heavy-duty bumper to install on the truck and gave the salesman $2,000 as a downpayment. Boruff later bought two cashiers checks bearing Taylor's name to pay the balance of the purchase price. Boruff instructed the salesman to put the title in Taylor's name. Boruff and Taylor had agreed that appearances would be best served by putting Taylor's name on all documents relating to the truck, since Taylor would be driving the truck for the smuggling operation.

Boruff and Taylor flew to Dallas, Texas to obtain automobile insurance for the truck and a Texas driver's license for Taylor. The truck's registration and insurance were placed in Taylor's name. Boruff later purchased a camper top for the truck, listing Taylor's name on the invoice. Boruff also installed a grill and bumper guard, a CB radio, and fog lights on the truck. Boruff and Taylor understood that if the truck was ever sold, Boruff would receive the money.

Boruff arranged to have his girlfriend, Brenda Lawless (Lawless), rent a car for him, which he planned to use in the smuggling operation. Lawless rented a white Lincoln Towncar in her own name and

turned it over to Boruff. The standard rental agreement signed by Lawless provided that only she would drive the car and that the car would not be used for any illegal purpose. Boruff was aware of these restrictions when he took possession of the vehicle. Boruff placed a CB radio in the glove compartment of the car and a magnetic antenna on its roof.

## B. The Smuggling Operation.

Taylor and Boruff traveled toward the Mexican border on Highway 385 south of Midland, Texas. Taylor drove the pickup truck, and Boruff drove the rental car. The two maintained contact by CB radio. At one point, Border Patrol Agent Newberry (Newberry) noticed the two vehicles traveling approximately 100 yards apart on the highway. He observed that the two vehicles were traveling at the same speed, bore Texas license plates, and contained no one else but the drivers. His view through the windows of the camper top was unobstructed. Although his suspicions were not then aroused, Newberry made a mental note of the vehicles because they fit a "smuggler" pattern common to the area.

Taylor and Boruff subsequently left the truck unattended on the United States' side of the Rio Grande river. When they returned, the truck had been loaded with marijuana as Boruff had arranged. Boruff and Taylor covered the marijuana with a tarpaulin and placed camping gear on top of it.

The next morning, Taylor and Boruff traveled northbound on Highway 385. The two vehicles passed Agent Newberry, who was traveling southbound in a Border Patrol vehicle. As Boruff passed, Newberry observed him put something to his mouth "as though it was a microphone" and noticed the CB antenna on top of Boruff's car. Newberry also saw that the same truck he had seen the previous day was trailing Boruff, separated only by a tour bus. Newberry decided to make a U-turn and follow the vehicles.

After spotting the Border Patrol vehicle, Boruff made a U-turn southbound to see whether the Border Patrol vehicle would pursue them. Boruff passed the Border Patrol vehicle, which was now traveling northbound in pursuit of the pickup truck. Agent Newberry, fearing that Boruff would get away, contacted another Border Patrol agent, Harris Clanton (Clanton), and instructed him to stop Boruff's car. Boruff made a second U-turn and traveled northbound, hoping to catch up to the Border Patrol vehicle and divert attention away from the pickup truck.

## C. The Searches, Seizures, and Arrests.

Agent Newberry pulled up behind the pickup truck and noticed the camping gear riding high in the camper. Newberry pulled along side of the truck and signalled Taylor to stop. Newberry approached the truck and asked Taylor if he would mind opening the camper top. Taylor complied, exposing the camping gear. Newberry opened the truck's tailgate and discovered 591 pounds of marijuana. Taylor was placed under arrest.

In the meantime, Agent Clanton had been pursuing Boruff but had not yet stopped him. As Boruff approached the point where the pickup truck was stopped, he saw agent Newberry standing in the road motioning for him to stop. Newberry noticed that the CB antenna was no longer on the roof of Boruff's car but was in plain view in the back seat. After Boruff stopped, he was placed under arrest and read his *Miranda* rights. The agents subsequently found in the car a walkie-talkie radio identical to one recovered from the pickup truck, a CB radio, the CB radio antenna, $4,700 in United States currency, and some of Boruff's personal effects.

As Agent Clanton drove Boruff to the Border Patrol station, Boruff denied having any knowledge of Taylor, the truck, or its contents. Clanton allowed Boruff to place a call to his attorney, who was out of the office. The attorney called back fifteen minutes later. Boruff proceeded to describe the events leading up to his arrest, in front of Clanton. Clanton later testified at trial that during the first half of the telephone conversation Boruff used "we" and "us" in describing the day's events,

while halfway through the conversation Boruff began to use the singular "I."

### D. Prior Proceedings.

Boruff and Taylor were indicted for conspiracy to possess and possession of more than 50 kilograms of marijuana with intent to distribute. 21 U.S.C. §§ 841(a)(1), 846. They moved to suppress the evidence on the grounds that the search of the pickup truck and the rental car took place without warrant or reasonable suspicion in violation of the fourth amendment. The district court held a suppression hearing, which consisted almost entirely of Agent Newberry's testimony concerning the searches and seizures. After the hearing was over, the government filed a belated answer to the defendants' suppression motion, challenging Boruff's fourth-amendment standing to contest the search of the pickup truck and the rental car. The district court concluded that the agents had no reasonable suspicion to stop or search the vehicles and granted the defendants' motion to suppress.

On appeal, this court affirmed the suppression order as to Taylor but reversed and remanded as to Boruff. The court concluded that Boruff had no standing to contest the search of the pickup truck because "Boruff had neither a proprietary nor a possessory interest in Taylor's truck." *United States v. Boruff*, No. 86–1175, slip op. at 9 (5th Cir. Apr. 27, 1987) [818 F.2d 863 (Table)]. The court did not rule on Boruff's standing to challenge the search of the rental car.

### E. The Present Proceedings.

Boruff subsequently filed a motion to establish standing in the pickup truck and the rental car. He explained that he had not presented any evidence to establish standing because the government had not given notice prior to the suppression hearing that it would make standing an issue. The district court held an evidentiary hearing, and Boruff presented evidence concerning his interest in the pickup truck.

The district court denied Boruff's motion to suppress, concluding that he had no legitimate expectation of privacy in the pick-up truck or the rental car and therefore had no standing to challenge the searches. Boruff was tried by jury and convicted on both counts of the indictment. The district court sentenced Boruff to ten years' imprisonment, a three-year term of special parole, and $100 in special assessments.

Boruff now appeals, contending that the district court erred in denying his standing to challenge the search of the truck and the rental car. He also argues that he should not have been tried on the superseding indictment, that the district court erroneously conditioned the giving of a requested jury instruction on a waiver of his right to remain silent, and that the court erred in allowing Agent Clanton to testify concerning Boruff's conversation with his attorney. We affirm.

### III. Analysis.

### A. Standing.

The district court may not suppress evidence under the fourth amendment unless the defendant establishes that an unlawful search or seizure violated his own constitutional rights. *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2443, 65 L.Ed.2d 468 (1980). "[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *Id.* (Emphasis in original). The fourth amendment does not protect merely subjective expectations of privacy but only those "expectation[s] that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967).

#### 1. The pickup truck

Boruff argues that he had a legitimate expectation of privacy in the pickup truck because (1) he was the equitable owner of the truck and had a possessory interest in it, (2) he exercised joint control over the truck during the smuggling operation, and (3) he had a subjective expectation of privacy in the truck and took precautionary measures to safeguard that privacy. He con-

tends that Taylor's legal title to the truck did not negate this legitimate expectation of privacy because property-law concepts are not controlling on the standing issue.

In response, the government denies that Boruff had a legitimate expectation of privacy in the pickup truck. It argues that Boruff's ownership and possessory interests were tenuous at best and that Boruff completely disassociated himself from the truck. The government also contends that we are bound under the law of the case by our prior holding that Boruff has no standing to challenge the search of the truck.

The law of the case does not control our decision on this issue because the evidence presented at Boruff's standing hearing was "substantially different" from that adduced at the prior suppression hearing. *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967). Our previous holding was based on a lack of evidence in the record that Boruff had any interest in "Taylor's truck." *Boruff,* No. 86–1175, slip op. at 9. Boruff subsequently presented evidence of his interest. The only reason Boruff had not presented this evidence before was because the government did not challenge his standing until after the suppression hearing was over. Under these circumstances, Boruff was entitled to present evidence of his standing. *See White,* 377 F.2d at 432.

We conclude nevertheless that Boruff failed to establish that he had a legitimate expectation of privacy in the pickup truck. Despite his asserted ownership interest, Boruff did everything he could do to disassociate himself from the truck in the event it was stopped by law enforcement officials. He placed the title, insurance, and registration in Taylor's name, paid for the truck with cashiers checks purchased in Taylor's name, and bought the camper top using Taylor's name. During the smuggling operation, Taylor, not Boruff, drove the truck. Boruff traveled in a separate vehicle and maintained a safe distance from the truck, allowed other vehicles between his vehicle and the truck, and left his position out in front of the truck after spotting the Border Patrol vehicle. As the district court concluded, these actions "clearly show[ed] Boruff's intention to leave any 'expectation of privacy' to Taylor."

In addition, Boruff was not present when the truck was stopped or searched. *See Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978) (legitimate presence at time of search an important factor). He had left his position out in front of the truck to pursue the Border Patrol vehicle. He could not have been in radio contact with Taylor while the latter was outside with an officer as the truck was being searched. We therefore discount Boruff's assertion that he had joint control of the truck at the time of the stop and the search. Boruff also disavowed any knowledge of the truck and its contents after his own vehicle was stopped.

Our decision in *United States v. Dotson,* 817 F.2d 1127 (5th Cir.), *modified,* 821 F.2d 1034 (5th Cir.1987), is distinguishable. In *Dotson,* the defendant loaned his car to a friend, Owens, for a brief time so that Owens could wash the car. Title to the car was in the name of Dotson's sister, although the car "for all practical purposes" belonged to him. Law enforcement officials stopped Owens for speeding and asked if they could search the trunk. The search uncovered evidence of drug activity that was used to prosecute Dotson. We held that Dotson had standing to challenge the search because, "[g]iven the limited nature of the bailment of the car to Owens, ... Dotson did not give up his expectation of privacy in the car by his temporary loan of the vehicle." *Id.* at 1138.

In this case, Boruff did much more than loan the truck to a friend for a brief period of time. He completely disassociated himself from the truck both legally and factually for the express purpose of avoiding detection. Even ignoring the admitted illegal purposes for this arrangement, Boruff's asserted expectation of privacy in the truck is not one "that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361, 88 S.Ct. at 516. An individual cannot reasonably expect to maintain privacy in a vehicle when he or she has rendered all of the normal incidents of own-

ership, including title and possession, to another and disavows any knowledge of or interest in it. We conclude that Boruff has no standing to challenge the search of the pickup truck.

2. The rental car.

Boruff maintains that he had a legitimate expectation of privacy in the rental car because he was in sole possession and control of the vehicle at the time of the stop. He also argues that regardless of whether he had a legitimate expectation of privacy in the vehicle, the search was the fruit of an illegal stop or "seizure" of his person and should therefore be suppressed. He claims the district court found that the agents did not have reasonable suspicion to justify the stop. We reject these contentions.

■ Boruff had no legitimate expectation of privacy in the rental car. Under the express terms of the rental agreement, Lawless was the only legal operator of the vehicle. Lawless had no authority to give control of the car to Boruff. The rental agreement also expressly forbade any use of the vehicle for illegal purposes. Boruff was well aware of these restrictions when he took possession of the car and used it during the smuggling operation. He therefore had no legitimate expectation of privacy in it. *See United States v. Obregon*, 573 F.Supp. 876, 879–80 (D.N.M.1983), *aff'd on other grounds*, 748 F.2d 1371 (10th Cir.1984).

■ Nor was Boruff's stop illegal. Roving border patrols may stop vehicles near the border if the agents have reasonable suspicion that the vehicles contain contraband or illegal aliens. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Reasonable suspicion exists if the agents "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that illegal activity is afoot. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). The existence of reasonable suspicion depends on the facts known to the agent at the time the

stop is made, not at the moment the agent decides to make the stop. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Tinkle*, 655 F.2d 617, 623 (5th Cir.1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1285, 71 L.Ed.2d 467 (1982).

■ At the time he stopped Boruff, Agent Newberry was aware of specific articulable facts which more than reasonably warranted suspicion that Boruff was involved in drug smuggling. Newberry had observed Boruff and Taylor traveling at the same speed, in the same two vehicles, at approximately the same distance apart, on two consecutive days on the same stretch of highway near the Mexican border. He knew that Boruff had put something up to his mouth as if it were a microphone when the Border Patrol vehicle passed, that the rental car had a magnetic CB radio antenna on the roof, that Boruff made several U-turns after spotting the Border Patrol vehicle, and that the CB antenna was no longer on the roof of the car when Newberry motioned for Boruff to stop. Most importantly, Newberry had discovered the 591 pounds of marijuana in the pickup truck. In view of these facts, Newberry's suspicion rose to the level of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). The search of the rental car was therefore not the fruit of an illegal stop.

*B. The Indictment.*

Boruff next contends that the district court erred in proceeding to trial on the superseding indictment. Boruff claims he was never arraigned on the superseding indictment as required by FED.R.CRIM.P. 10, that no government attorney ever signed it as required by FED.R.CRIM.P. 7(c)(1), and that the original of the superseding indictment is missing from the clerk's files. He claims these errors require reversal of his conviction.

■ We agree that it was error for the district court to proceed to trial when Boruff had not been arraigned on the su-

perseding indictment and no government attorney had signed it, as required by the Federal Rules of Criminal Procedure. FED. R.CRIM.P. 7(c)(1), 10. One important function of the Federal Rules of Criminal Procedure is to protect the rights of the accused. *See* FED.R.CRIM.P. 2; *United States v. Hughes,* 766 F.2d 875, 879 (5th Cir.1989). The absence of the original of the superseding indictment from the clerk's files also gives cause for concern.

■ However, these errors did not affect any of Boruff's substantial rights. The superseding indictment bore the signature of the grand jury foreperson and the stamp of the court. Boruff raises no real challenge to its authenticity. Moreover, the superseding indictment merely clarified the conspiracy dates in count two of the original indictment and specified the amount of marijuana involved in the charges. These modifications did not unfairly surprise Boruff. He was fully aware of the facts the superseding indictment contained, and his lawyer had a copy of it in his files. Finally, Boruff did not object to being tried on the superseding indictment until after the jury was impaneled and sworn. Under these circumstances, the error was harmless. 28 U.S.C. § 2111; FED.R.CRIM.P. 52(a).

### C. The Jury Charge.

■ Boruff claims that the district court impermissibly conditioned the giving of his theory-of-defense instruction on the requirement that he testify at trial. The proposed jury instruction stated it was Boruff's position that he purchased the truck for legitimate purposes and that he had no part in or knowledge of Taylor's possession or transportation of the marijuana. It further stated that the mere fact Boruff purchased the truck in which marijuana was later found and that he had some association with Taylor did not necessarily establish that he possessed the marijuana, participated in Taylor's illegal activities, or conspired with Taylor. Boruff argues that this error requires reversal of his conviction. We reject this contention.

The district court did not impermissibly condition the giving of Boruff's theory-of-defense instruction on his willingness to testify at trial. The district court merely observed that if Boruff did not testify to the facts asserted in the proposed instruction, no evidence would support its inclusion in the jury charge. The court made this observation after all but two minor government witnesses had testified.

More significantly, the district court included the essence of Boruff's theory of defense in the jury charge, despite his decision not to testify. The court instructed the jury that mere presence at the scene of a crime and knowledge that a crime is being committed are insufficient to establish a person's participation in the offense. The court also stated that the mere fact persons have associated with each other to discuss common aims and interests does not necessarily establish the existence of a conspiracy.

The only element of Boruff's defense theory that was arguably absent from the jury charge was that his purchase of the pickup truck did not necessarily prove that he possessed the marijuana or otherwise participated in Taylor's illegal activities. Boruff had the opportunity to bring this omission to the attention of the district judge at the close of all the evidence when the court formally considered the parties' objections to its proposed charge. Boruff merely asserted in general fashion that "we are entitled to, we respectfully suggest to the Court, the theory of defense instructions as submitted."

The district court was not required to give the proposed instruction "as submitted" because it contained unsupported factual assertions. *See United States v. Johnson,* 872 F.2d 612, 622 (5th Cir.1989). Nor was Boruff's objection sufficiently specific to require the court to consider whether lesser portions of the proposed instruction should be included in the jury charge. FED.R.CRIM.P. 30; *see, e.g., United States v. Bey,* 667 F.2d 7, 10 (5th Cir.1982). Since the omission of Boruff's "mere purchase" language was not plain error, the court's

charge was adequate. *See Bey,* 667 F.2d at 10.

*D. Agent Clanton's Testimony.*

Boruff's final argument is that the district court erred in allowing Agent Clanton to testify concerning Boruff's telephone conversation with his attorney. He contends that since he was initially stopped on less than reasonable suspicion, the testimony was the fruit of an illegal stop and should therefore be suppressed under the fourth amendment. He also argues that admitting the testimony violated his sixth amendment right to counsel. We disagree.

We have already indicated that Boruff was stopped legally. Thus, his fourth amendment argument must fail.

We also reject Boruff's sixth amendment claim. "The Sixth Amendment is not violated whenever—by luck or happenstance—the state obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). In order to show a violation of the sixth amendment, the defendant must demonstrate that the government informant or official "took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Kuhlman v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2629, 91 L.Ed.2d 364 (1985). In this case, Boruff voluntarily chose to speak to his attorney in the presence of Clanton. Clanton merely overheard the conversation as Boruff chose to allow him to do and did nothing to elicit incriminating statements from Boruff. No sixth amendment violation has been shown.

IV. Conclusion.

The judgment is AFFIRMED.