1 F.3d 1250
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Vidal MELENDEZ-OKAMURA, Defendant-Appellant.
 No. 92-2244.
 United States Court of Appeals, Tenth Circuit.
 Aug. 2, 1993.
 
 Before LOGAN, ANDERSON, and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHAN H. ANDERSON, Circuit Judge.
 
 
 1
 Defendant-appellant Vidal Melendez-Okamura ("Melendez") was charged with possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. Sec. 841(a)(1), 21 U.S.C. Sec. 841(b)(1)(B), and 18 U.S.C. Sec. 2. Melendez entered a plea of not guilty and filed a motion to suppress both physical evidence seized from him and inculpatory statements made by him following his arrest. He claimed that he was illegally seized by an agent at a United States Border Patrol checkpoint. An evidentiary hearing on Melendez' motion to suppress was conducted on August 31, 1992. After hearing testimony, the district court made oral factual findings on the record, and denied Melendez' motion to suppress physical evidence but granted, in part, his motion seeking to suppress inculpatory statements made by Melendez prior to his arrest. Thereafter, Melendez entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. On November 25, 1992, Melendez was sentenced to 60 months' imprisonment, to be followed by a term of four years of supervised release. Melendez appeals, contending that the border patrol agent did not have reasonable suspicion to refer him to what Melendez describes as a secondary inspection area, that his detention thus constituted an unlawful seizure in violation of the Fourth Amendment, and that the evidence of marijuana must be suppressed as fruit of the poisonous tree. We affirm.
 
 FACTS
 
 2
 On November 22, 1991, Defendant-Appellant Melendez approached the inspection area at the permanent Border Patrol checkpoint located approximately 35 yards from the New Mexico-Arizona state line south of Rodeo, New Mexico. Although the checkpoint is classified as permanent, it is not continuously operational. R.Vol. I at 6-7. When it is in operation, all northbound and eastbound traffic is diverted to the checkpoint by means of cones used to direct traffic into the inspection area and signs advising drivers that they must stop ahead.
 
 
 3
 Approximately 35 yards south of the checkpoint is an unpaved dirt road referred to as the State Line Road. Because the cones divert traffic to the inspection area at the checkpoint, any traffic attempting to turn onto State Line Road would have to go through the cones. R.Vol. I at 52.
 
 
 4
 At about 6:45 a.m. on November 22, Melendez drove a pickup truck slowly toward the checkpoint area and apparently began to maneuver the truck through the cones to turn left onto State Line Road. Id. at 12-13, 52. As Melendez did so, Agent Todd Latham signaled with his flashlight for Melendez to drive forward to a stop sign at the inspection area. In his brief, Melendez states that "because there was no area sectioned off for a secondary search, his continued detention near the portable stop sign was the functional equivalent of a referral to a secondary area." Appellant's Brief-in-Chief at 8.
 
 
 5
 After some hesitation, Melendez pulled up to the stop sign. Agent Latham asked Melendez if he was a U.S. citizen, to which Melendez responded "yes." The agent then asked Melendez where he was going, and Melendez said he was going camping. Agent Latham testified at the suppression hearing that during this routine questioning, Melendez appeared nervous and "shaky." R.Vol. I at 16, 29-30. He further testified that he noticed a blue tarp in the bed of Melendez' pickup covering what appeared to be a box approximately 18 inches tall by 3 to 4 feet wide by 6 1/2 feet long, and that "[i]t seemed like ... an alien could have been hiding there." R.Vol. I at 18.
 
 
 6
 Latham stated that his suspicion was aroused by a combination of (1) Melendez' attempt to turn off at the State Line Road; (2) his nervous response to questioning; and (3) the size and shape of the "box" under the tarp. R.Vol. I at 13, 16-19. He therefore asked Melendez for permission to look under the tarp. After a momentary hesitation, Melendez responded "Sure, go ahead." Id. at 17. Latham stepped away from the vehicle expecting Melendez to step out. When Melendez did not exit the vehicle, Latham said, "Sir, would you please step out of the vehicle ... and show me what you have under your [tarp]?" Id. at 19. Melendez then got out of the cab of the pickup and lifted the tarp four or five inches. Agent Latham noticed black plastic wrapping and ropes, "set up like a backpack," and also noticed that "the odor of marijuana was real strong." Id.
 
 
 7
 Realizing that Melendez was carrying contraband, Agent Latham "placed [his] hand on [his] weapon ... [and] hollered for Agent [John] Hackworth," his partner. Id. at 20. When Agent Hackworth arrived, he asked Melendez what was under the tarp, and Melendez said "It's marijuana." Thereupon, Melendez was read his Miranda rights and placed under arrest. R.Vol. I. at 20, 48, 55. He later signed a form indicating he understood his rights and that he would waive them. The waiver was freely and voluntarily given. R.Vol. I. at 56-57.
 
 
 8
 At the hearing on his Motion to Suppress, Melendez testified that he consented to the search of his pickup only because he "felt he had to [because Agent Latham] looked pretty nervous, and he's holding a gun." Id. at 89. However, on cross-examination, Melendez admitted that he was not a U.S. citizen, but a Mexican citizen, and had lied to Agent Latham about his citizenship. Id. at 97. He also testified that he had been arrested on several previous occasions and had received Miranda warnings many times prior to this arrest. Id. at 98-100.
 
 
 9
 The district court ordered the suppression of the first oral statement made by Melendez ("It's marijuana"), but denied the motion to suppress evidence of the marijuana. It found that (1) Melendez was stopped at a permanent checkpoint; (2) once he entered the area marked by cones, the agent had a right to direct him to the stop sign; (3) Melendez' actions in trying to turn left on State Line Road aroused Agent Latham's suspicion; (4) Melendez' nervous responses and hesitations during questioning heightened Agent Latham's suspicion; (5) the box-shaped object under the tarp was large enough to conceal a person and thus provided further reason for Agent Latham to suspect criminal activity; (6) Melendez voluntarily consented to the search of the truck bed; and (7) once Agent Latham smelled marijuana, he had probable cause to arrest Melendez. R.Vol. I at 111-13.
 
 DISCUSSION
 
 10
 Melendez frames the issue on appeal as follows: "The trial court erred by finding there was reasonable suspicion to justify the border patrol agent's order directing Melendez to enter the 'checkpoint' and the subsequent detention and search of Melendez's vehicle." Appellant's Brief-in-Chief at 7. Specifically, he claims that his referral to the stop sign and further detention at the checkpoint was the functional equivalent of a referral to a secondary inspection area, which he asserts cannot legally occur without individualized suspicion. Appellant's Brief-in-Chief at 8.
 
 
 11
 In reviewing the district court's denial of a motion to suppress evidence, we accept the court's factual findings unless they are clearly erroneous and we consider the evidence in the light most favorable to the government. United States v. Pinedo-Montoya, 966 F.2d 591, 593 (10th Cir.1992). The ultimate question of whether a search and seizure was reasonable is a question of law which we review de novo. United States v. Abreu, 935 F.2d 1130, 1132 (10th Cir.1988), cert. denied, 112 S.Ct. 271 (1991).
 
 
 12
 The law regarding stops and permissible questioning at permanent border checkpoints is well-settled. In United States v. Martinez-Fuerte, 428 U.S. 543 (1976), the Supreme Court held "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment and need not be authorized by warrant," id. at 566, and that such stops "may be made in the absence of any individualized suspicion." Id. at 562. Moreover, no individualized suspicion is necessary to stop, question and then selectively refer motorists to a secondary inspection checkpoint. Id. at 563. This circuit has repeatedly held likewise. See United States v. Ludlow, 992 F.2d 260, 263 (10th Cir.1993), and cases cited therein. In Ludlow, we noted that
 
 
 13
 [n]otwithstanding the clarity of our recent decisions specifically holding that no individualized suspicion is necessary to selectively refer motorists to secondary [checkpoints], it is apparent that confusion continues in this area. We perceive that the confusion stems from a misperception of the relationship between the proper scope of a routine checkpoint inquiry and the location in which that inquiry may take place. As our prior decisions indicate, Border Patrol agents have virtually unlimited discretion to selectively refer cars to the secondary inspection area. Thus, a routine checkpoint inquiry may properly take place at a primary inspection area, a secondary inspection area, or both as long as the scope of the inquiry is appropriate.
 
 
 14
 Id. at 263-64 (footnotes omitted). We reiterate here that a border patrol agent may always (with or without a reason) briefly detain a vehicle at a permanent checkpoint and, if his suspicions are aroused, he may also question the vehicle's occupants about matters other than citizenship. See United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir.1990).
 
 
 15
 Applying these principles to the facts before us, Melendez' claim must fail. No reasonable suspicion was necessary for Agent Latham to direct Melendez to pull forward to the stop sign inside the checkpoint area. It is of no consequence whether this was a primary inspection area (which it was) or a secondary inspection area. To the extent that Melendez bases his claim on the proposition that individualized suspicion is needed to refer a motorist to a secondary inspection area, his premise is without merit. See Martinez-Fuerte, 428 U.S. at 563; Ludlow, 992 F.2d at 263; United States v. Pineda-Montoya, 966 F.2d 591, 593 (10th Cir.1992); United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir.1991). Also without merit is Melendez' claim that reasonable suspicion was required to direct him to the stop sign because he had attempted to turn onto a "legitimate road"--the State Line Road--before reaching the checkpoint. Appellant's Brief-in-Chief at 8. Cones were set up to divert traffic from turning onto State Line Road. We agree with the district court that "once [Melendez] entered the cones, whether or not he wanted to go left [onto State Line Road], ... [t]he agent had every right to bring him up to the stop sign." R.Vol. I at 112.
 
 
 16
 Agent Latham questioned Melendez about his citizenship and his destination, both routine inquiries. The district court found that Agent Latham's suspicion was aroused by Melendez' "shaky" response to these questions, and by the size and shape of the box beneath the tarp in the bed of the truck. When Agent Latham asked Melendez for permission to look underneath the tarp, Melendez consented. Once Melendez lifted the tarp and Agent Latham could smell the odor of marijuana, he had probable cause to further detain Melendez. See United States v. Carreon, 872 F.2d 1436, 1440 (10th Cir.1989) (detention and search beyond the routine customs inspection requires " 'reasonable suspicion' justified by a particularized and objective basis for suspecting the particular person of smuggling contraband"). These factual findings are not clearly erroneous, nor is the court's legal conclusion that the detention and subsequent search in this case were valid under the Fourth Amendment.
 
 
 17
 For the reasons stated above, we AFFIRM the district court's order denying Melendez' motion to suppress.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3