**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Michael SKOWRONSKI,
Defendant-Appellant.**

**No. 86–2490.**

United States Court of Appeals,
Tenth Circuit.

Aug. 28, 1987.

Robert Ramos (Gary Hill, on the brief), El Paso, Tex., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before McKAY, TACHA and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant William Skowronski entered a conditional plea of guilty to the second count of a four-count indictment, conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846, reserving the right to appeal the trial court's denial of his motion to suppress evidence.

On March 15, 1985, a confidential source informed the government that someone named "Billy" was transporting large quantities of marijuana from El Paso, Texas to Oklahoma City, Oklahoma. The source advised that Billy was a truck driver for the Old El Paso Company and passed through Oklahoma City once a week on his regular run from Texas to Missouri. When in Oklahoma City, Billy would contact Terry Smith of Yukon, Oklahoma, to arrange for delivery of the marijuana. Upon receipt of the marijuana, Smith would transport the marijuana to his home in Yukon for distribution.

On April 22, 1985, the source advised the government that Billy would meet with Smith at the Union 76 truckstop in Oklahoma City. The next day, an F.B.I. agent observed an Old El Paso tractor/trailer rig proceed to the Union 76 truckstop and park. The driver remained inside the truck for about 30 minutes. A Cadillac Eldorado approached the Old El Paso truck and pulled up nose-to-nose. The driver, identi-

fied as Smith, entered the passenger side of the tractor. One and one-half hours later, both vehicles departed. Shortly thereafter, the Cadillac Eldorado was seen parked in the driveway of Smith's residence. The F.B.I. agent later checked with Mountain Pass Canning Company, the operators of Old El Paso tractor/trailers, and was told that the defendant William Skowronski, also known as Billy, was the driver of the tractor.

The confidential source advised the government that Billy had delivered another shipment of marijuana, packed in various-sized cardboard boxes, to Smith in Oklahoma City on July 10, 1985. An F.B.I. agent then contacted Mountain Pass and learned that defendant Skowronski drove through Oklahoma City for refueling on his regular route to Neosho, Missouri.

On July 22, 1985, in accordance with information provided by the confidential source, defendant met again with Smith at the Union 76 truckstop. Smith was driving a black GMC pickup of which he was the registered owner. The Old El Paso rig and the GMC truck then proceeded to the Rollins Truck Leasing facility. Smith entered the passenger side of the tractor and remained for about 20 minutes, until he took a large cardboard box from the cab and loaded it in the bed of the GMC truck. Smith then returned to his home. On July 29, 1985, defendant and Smith met at the Union 76 truckstop and then proceeded to the Rollins truck facility. Smith entered the passenger side of the tractor for about 10 minutes and then both vehicles left. Shortly thereafter, the GMC pickup was seen parked in the driveway of Smith's residence.

In October 1985, the confidential source informed the government agent concerning financial arrangements for the transactions between defendant and Smith. According to a fellow worker, in the summer of 1984 Smith's wife had shown her fellow workers $1000 in cash and told them that it was part of the proceeds from her husband's drug dealing.

In February 1986, the dispatcher for Mountain Pass advised that defendant would travel through Oklahoma City on his regular route. On February 17, 1986, agents observed defendant at the Rollins truck facility. Smith then arrived in a 1971 blue Oldsmobile and left with defendant. When they returned, they both got into the Old El Paso tractor and Smith removed two cardboard boxes from the tractor and loaded them into the trunk of the Oldsmobile. Smith was seen driving the Oldsmobile to his house.

Informed by the dispatcher at Mountain Pass that defendant would travel through Oklahoma City on his regular route, the agent observed another meeting between defendant and Smith at the Union 76 truckstop in Smith's GMC truck on March 24, 1986. The two left for the Rollins truck facility where they stood near the passenger side of the tractor and defendant opened the tool compartment behind the passenger door and gave Smith a small package. Smith then placed the package in the cab of the GMC truck and departed to his residence.

On April 4, 1986, the Mountain Pass dispatcher indicated that defendant would travel to Oklahoma City on his route. Based upon the above and other information, the federal agents obtained search warrants to search the Smith residence and the Old El Paso tractor on April 7, 1986. That evening, defendant arrived in the tractor at the Rollins truck facility. Smith arrived later driving a 1981 Buick. The agents then observed a meeting between the two in the cab of the tractor. Both men then carried a cardboard box to the rear of the Buick. The box was placed in in the trunk. The trunk lid was closed and the federal agents arrested Smith and defendant and executed the search warrant on the tractor. The F.B.I. agent testified that the Buick "was seized at the time for forfeiture purposes and ultimately inventoried and taken back to our office." Rec. vol. II at 14. A search of the Buick revealed a little more than eight pounds of marijuana wrapped in a plastic trash bag and placed in a cardboard box. The box was in the trunk. After the inventory search and seizure the Buick was returned to a lienholder.

On appeal, defendant challenges the validity of his warrantless arrest. The

warrantless arrest of the defendant was proper if at the time of the arrest the agent had probable cause to believe that a crime was being or had been committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The facts and circumstances within the knowledge of the agents and those of which they had reasonably trustworthy information were sufficient to warrant an objective belief that a crime had been committed. *See e.g. United States v. Alonso,* 790 F.2d 1489, 1495–96 (10th Cir.1986). The confidential source had provided detailed information concerning the defendant's trafficking in marijuana. This information was verified repeatedly by the agents. It is true that prior to the arrest the agents had not personally observed what was being exchanged between Smith and defendant. However, there were independent sources indicating that Smith and defendant were trafficking in marijuana and the pattern of operation was certainly consistent with that theory. The trial judge determined that the arrest was based on probable cause after considering the testimony at the suppression hearing and the information contained in the lead agent's affidavit to obtain the search warrants. In a suppression hearing, the trial judge's determinations which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous. *United States v. Gagnon,* 635 F.2d 766, 769 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Here, the trial judge's determination of probable cause is amply supported by the evidence.

Defendant's next point on appeal is that the warrantless search of the closed container (which contained the contraband) within the trunk of the Smith vehicle violated the fourth amendment. The trial court concluded that the government had authority to seize the Smith vehicle based on the federal forfeiture statute, 21 U.S.C. § 881,[1] and 21 C.F.R. § 1316.72, which allow the F.B.I. to seize property subject to forfeiture. As framed on appeal, the apparent issue is whether the agents had authority to perform a warrantless search of the container in the trunk.

At oral argument, the panel inquired as to whether the defendant had standing to challenge the warrantless search of the Buick and the container located therein. Defendant had the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.[2] *Rakas v. Illinois,* 439

---

**1.** 21 U.S.C. § 881 provides in pertinent part:
(a) **Subject property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this title.
. . . .
(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).
(4) All conveyances, including aircraft, vehicles or vessels, which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2). . . .
. . . .
(b) **Seizure pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims.** Any property subject to civil or criminal forfeiture to the United States under this title may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property,

except that seizure without such process may be made when—
(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

. . . . .

(4) the Attorney General has reason to believe that the property is subject to forfeiture under this title.

**2.** Neither the parties nor the trial court addressed the issue of standing. Under these circumstances, one alternative would be to remand the case to the district court for further factual development. *Combs v. United States,* 408 U.S. 224, 228, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (per curiam). There are several considerations, however, which prompt us to decide the issue. As noted above, defendant had the burden of proving facts indicating that his own fourth amendment rights were violated by the search in question. And this is not a situation where the record is "virtually barren" of the facts necessary to decide the standing inquiry. *Id.* at 227, 92 S.Ct. at 2286. One important fact was conceded by defense counsel at oral argument, namely that the defendant had no interest

# 1418

U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). Fourth amendment rights are personal and may not be asserted vicariously. *Id.* at 133–34, 99 S.Ct. at 425. Thus, suppression of evidence will be an appropriate remedy only when a person's rights have been violated by the search itself; it is not enough that a person is aggrieved by the introduction of damaging evidence derived from the search. *Alderman v. United States*, 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). Whether a person has standing to contest a search on fourth amendment grounds turns on whether the person had a legitimate expectation of privacy in the area searched, not merely in the items seized. *United States v. Salvucci*, 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). Relevant factors in the inquiry include the "precautions customarily taken by those seeking privacy," the way a location is used, the history of the fourth amendment and society's recognition of permissible conduct in particular places as reflected by property rights. *Rakas v. Illinois*, 439 U.S. at 152–53, 99 S.Ct. at 435 (Powell, J. concurring); *United States v. Obregon*, 573 F.Supp. 876, 878–79 (D.N.M. 1983), *aff'd*, 748 F.2d 1371 (10th Cir.1984).

Applying those principles to this case, defendant cannot be said to have a reasonable expectation of privacy in the vehicle used by his codefendant. There is no evidence to indicate that defendant had either lawful possession or control of the Buick driven by Smith. *See United States v. Erickson*, 732 F.2d 788, 790 (10th Cir.1984). The evidence indicates no connection between the defendant and the Buick. Defendant drove to the Rollins truck facility in a different vehicle (the Old El Paso tractor/trailer) and assisted Smith in transferring the cardboard box to Smith's vehicle. Instead of going their separate ways subsequent to the transfer, defendant and Smith were arrested. Smith's vehicle was seized before it could be used to transport the contraband. Record vol. II at 25–26. Under these circumstances, we fail to see

in the vehicle subject to search. For these reasons, we proceed with the standing issue.· *See*

how defendant could claim a legitimate expectation of privacy in the cardboard box, let alone in Smith's vehicle. Lacking a legitimate expectation of privacy in the area searched or the items seized, defendant lacks standing to contest the search of the trunk which resulted in the discovery of the cardboard box containing the marijuana. Thus, we do not reach the merits of the warrantless search of the forfeited vehicle and the cardboard box located therein.

AFFIRMED.

*United States v. Hansen,* 652 F.2d 1374, 1381–84 (10th Cir.1981).