UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose ABREU, Defendant–Appellant.

No. 90–1097.

United States Court of Appeals,
Tenth Circuit.

June 10, 1991.

Richard N. Stuckey, Denver, Colo., for defendant-appellant.

John Milton Hutchins, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., and Michael P. Carey, Asst. U.S. Atty., with him on the brief), D. Colo., Denver, Colo., for plaintiff-appellee.

Before McKAY, and ANDERSON, Circuit Judges, and CHRISTENSEN, District Judge.[1]

McKAY, Circuit Judge.

Defendant was convicted of conspiracy to possess with the intent to distribute, and possession of with the intent to distribute, more than five kilograms of cocaine. At trial, defendant moved to suppress evidence seized from a tractor-trailer rig. He appeals the district court's denial of his motion.

## I.

On September 8, 1989, a tractor-trailer rig pulled into the port of entry in Loma, Colorado, on Interstate 70 near the Utah border. Franklin Escano, the defendant's nephew, was driving the rig, and Rene Brito was the passenger. The tractor was a 1985 Kenworth titled to defendant. On the outside of both cab doors appeared the name "J. Abreu Transport, Union City, New Jersey." The trailer was a 1979 Dorsey owned by Eduardo Schaper of Omaha, Nebraska.

During the initial inspection, officials detected several violations. The tractor did not have a current vehicle safety inspection sticker. Although Mr. Escano told the scale operator that the trailer was empty, it was approximately 4000 pounds heavier than its estimated unloaded weight.

The safety inspector requested that Mr. Escano produce several documents, including a driver's license. Mr. Escano, however, could only produce a driver's license application and a learner's permit which specified that he was nineteen years old, two years under the twenty-one-year minimum age requirement for the interstate transportation of cargo. His passenger, Mr. Brito, was also under age. In addition, Mr. Escano told the inspector that he did not have vehicle registration documents for the trailer. He did, however, present registration papers for the tractor showing defendant to be the owner.

Upon the request of the safety inspector, Mr. Escano agreed to open the padlocked trailer. The inspector climbed into the trailer and saw a row of taped cardboard U–Haul boxes underneath wooden pallets. He became suspicious because the cargo was not secured on top of the pallets and because both drivers were under age. The inspector asked his supervisor to contact the Colorado State Patrol.

A state trooper arrived shortly thereafter and arrested Messrs. Escano and Brito for the interstate transportation of cargo while under age. The trooper and the inspector then climbed into the trailer and opened one of the U–Haul boxes. Inside was a brown plastic bag containing white crystalline powder. After contacting the local authorities and performing laboratory tests, it was determined that the powder was cocaine. The tractor-trailer rig was impounded.

Officials obtained a search warrant and seized 474 kilograms of cocaine from the trailer. Seized from the cab of the tractor were several items, including: a registration card listing the trailer's license plate as belonging to another trailer registered to Two Brothers Transportation at 400 38th Street in Union City, New Jersey; a registration for a different trailer in defendant's name and listing the same New Jersey address; and an insurance card with defendant's name crossed out and replaced, in handwriting, with Two Brothers, 400 38th Street, Union City, New Jersey. Officials also seized a Colorado Department of Revenue permit for the rig in defendant's name at the New Jersey address, a motor vehicle and fuel registration permit for the 1985 Kenworth tractor, and a daily log book in the names of Mr. Brito and J. Abreu Transport.

An agent of the Drug Enforcement Agency investigated the Union City, New Jersey, address listed for defendant and Two Brothers Transportation. Although neither maintained an office there, the

1. Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

agent found defendant's accountant at the suite listed as defendant's mailing address. The accountant told the agent that he knew of defendant and J. Abreu Trucking but had never heard of Two Brothers and had never received mail for them. Instead, the evidence demonstrated that Two Brothers is a Nebraska corporation. Eduardo Schaper, the owner of the 1979 Dorsey trailer containing the cocaine, is president of Two Brothers Transportation. The New Jersey Secretary of State reported that Two Brothers does not exist in New Jersey or New York.

After reviewing the evidence, the district court found that defendant had no right, title, or interest in the trailer. *United States v. Abreu*, 730 F.Supp. 1018, 1023 (D.Colo.1990). The court also found that defendant did not have any "ownership interest in, or employment or agency relationship with, any entity or person that does." *Id.*

Officials arrested defendant in his New York City apartment on September 9, 1989, pursuant to an arrest warrant. After being advised of his rights in Spanish and English, defendant consented to a search of the apartment. A loaded pistol and two duffel bags containing $145,000 were found.

Sometime later at DEA Headquarters in New York City, defendant admitted to agents that he was responsible for the cocaine seized in Colorado. He stated that he directed Messrs. Escano and Brito to transport the cocaine from California to New York in the tractor-trailer rig.

At trial, defendant moved to suppress the evidence seized from the trailer at the Loma, Colorado, port of entry and the evidence derived therefrom. The district court denied the motion after analyzing defendant's rights in the tractor and the trailer separately. The court concluded that he had no reasonable expectation of privacy in the trailer and, therefore, did not have standing to contest the trailer's search and seizure. Defendant contends that this determination was in error.

## II.

In reviewing the district court's denial of a motion to suppress evidence, we must accept the court's factual findings unless they are clearly erroneous and must consider the evidence in the light most favorable to the government. *United States v. Soto–Ornelas*, 863 F.2d 1487, 1490 (10th Cir.1988). The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review *de novo*. *United States v. McKinnel*, 888 F.2d 669, 672 (10th Cir.1989).

Although the question of whether a search and seizure violates the Fourth Amendment rights of defendant is often referred to as "standing," it is "more properly subsumed under Fourth Amendment doctrine." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978); *United States v. Erwin*, 875 F.2d 268, 269–70 (10th Cir.1989). The analysis focuses on whether defendant had his own Fourth Amendment rights violated by the challenged search and seizure. *Rakas*, 439 U.S. at 133–34, 99 S.Ct. at 425–26. Fourth Amendment rights are personal and defendant cannot claim a violation based on the introduction of evidence obtained through an illegal search and seizure of a third person's property. *Id.*; *United States v. Skowronski*, 827 F.2d 1414, 1418 (10th Cir. 1987).

The question of whether defendant's Fourth Amendment rights were violated involves two inquiries. First, defendant must establish a subjective expectation of privacy in the place searched. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Second, that expectation must be one that society would recognize as objectively reasonable. *Id.*; *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). Defendant has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search and seizure. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. at 423 n. 1.

■ A court must look at all the facts and circumstances to determine whether defendant's subjective expectation of privacy is legitimate. *See United States v. Salvucci*, 448 U.S. 83, 91–93, 100 S.Ct. 2547, 2552–54, 65 L.Ed.2d 619 (1980). Important considerations include ownership, lawful possession, or lawful control of the place searched. *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12; *Arango*, 912 F.2d at 445.

### A.

■ In appealing the district court's ruling that defendant did not have a legitimate expectation of privacy in the 1979 Dorsey trailer containing cocaine, defendant challenges two factual findings of the district court. Defendant asserts that the district court clearly erred in finding he had no ownership, employment, or agency relationship with any entity or person that had a right, title, or interest in the trailer. Defendant also argues that the district court erred in finding that *he* had no right, title, or interest in the trailer. He bases this second argument on his contention that the district court incorrectly separated the 1985 Kenworth tractor from the 1979 Dorsey trailer for purposes of Fourth Amendment analysis. Instead, defendant asserts that the appropriate inquiry is to examine these two units as one motor vehicle. Because the area searched, according to defendant, was the tractor-trailer rig in its entirety, and because he owned the tractor unit, defendant argues that he had a subjective and legitimate expectation of privacy in the trailer. Accordingly, defendant asserts that the search violated his Fourth Amendment rights because the officials did not have a search warrant when they initially entered the trailer and found cocaine.

We are not persuaded that we must analyze the tractor-trailer rig as one unit for Fourth Amendment purposes because of their physical linkage and alleged functional inseparability. Although the linkage is one factor tending to support a legitimate expectation of privacy, it is insufficient when we examine, as we must, all the facts and circumstances in this case. *See Salvucci*, 448 U.S. at 91–93, 100 S.Ct. at 2552–54 (1980); *see also United States v. Strmel*, 744 F.2d 1086 (5th Cir.1984) (analyzing tractor and trailer separately for Fourth Amendment purposes).

Title to the trailer was in the name of Eduardo Schaper, not defendant's. Property ownership, although not controlling, is an important consideration in determining whether defendant had a legitimate expectation of privacy. *See Arango*, 912 F.2d at 445; *Erwin*, 875 F.2d at 270–71. Moreover, defendant concedes that there was no evidence showing that Mr. Schaper authorized defendant to use the trailer. Brief for Appellant at 14. The failure to present evidence of lawful possession of the place searched further indicates that defendant had no reasonable expectation of privacy in the trailer. *See Arango*, 912 F.2d at 446; *United States v. Erickson*, 732 F.2d 788, 790 (10th Cir.1984). Considering the evidence in the light most favorable to the government, the district court's finding that defendant had no right, title or interest in the trailer was not clearly erroneous. *See Soto–Ornelas*, 863 F.2d at 1490.

Furthermore, the district court did not err in finding that defendant did not have an ownership, employment, or agency relationship with any entity or person that had an interest in the trailer. The mere fact that documents seized from defendant's tractor showed the same New Jersey address for Two Brothers and J. Abreu Trucking is insufficient to demonstrate that defendant had an interest in the truck. Defendant's accountant, present at the New Jersey address, stated that he had never received mail for Two Brothers at that address and that he had never heard of them. Two Brothers Transportation did not formally exist in New Jersey. It was a Nebraska corporation of which Mr. Schaper was president. Defendant was not an officer, director, shareholder, or employee of Two Brothers Transportation. *Abreu*, 730 F.Supp. at 1023. The trailer's license plates were registered to Two Brothers. In light of this evidence, we believe the district court's finding was not clearly erroneous. *See Skowronski*, 827 F.2d at 1418 (defendant lacked standing to challenge

search of vehicle trunk due to failure to demonstrate relationship between defendant and vehicle); *United States v. Erickson,* 732 F.2d at 790 (10th Cir.1984) (defendant failed to establish legitimate expectation of privacy in aircraft where there was no evidence showing that defendant had anything to do with owner of aircraft or that he was authorized by owner to possess or use it).[2]

### B.

 Defendant also argues that the district court erred in denying his motion to suppress documents seized from the tractor without determining whether probable cause existed for the issuance of the search warrant.

Defendant's argument, however, is based on his position that the officials at the Loma, Colorado, port of entry conducted an illegal search and seizure when they climbed into the trailer, opened one of the U–Haul boxes, and discovered powder which was later identified as cocaine. In his motion to suppress, defendant stated that the seizure of documents from the tractor "occurred solely because of the illegal search and seizure" of the trailer. Record, Doc. 6, at 2 (Nov. 1, 1989). Thus, defendant argues that the documents seized from the tractor must be suppressed because the search warrant used to obtain the documents derives from the allegedly unconstitutional initial seizure of cocaine.

We have already affirmed the district court's ruling that defendant had no legitimate expectation of privacy in the trailer. Consequently, his argument that the search warrant for the tractor was issued without probable cause is without merit. The district court correctly refused to accept his position that the evidence derived

from the initial search of the trailer was tainted as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

The district court's Order is AFFIRMED.

---

**2.** Defendant also contends that the district court erred by not adopting a "joint venture" theory of standing. *See United States v. Pollock,* 726 F.2d 1456 (9th Cir.1984) (defendant and others had a legitimate expectation of privacy in methamphetamine laboratory where they had moved the laboratory to avoid detection and had manufactured methamphetamine at night to conceal their actions). He argues that he engaged in a joint venture to transport cocaine with Two Brothers Transportation, Eduardo Schaper, and

the vice-president of Two Brothers, and therefore had a legitimate expectation of privacy in the trailer.

We decline to evaluate the validity of the "joint-venture" standing theory. Defendant's contention that he engaged in a joint venture with Two Brothers, its vice-president, and Mr. Schaper is without merit given our determination that he failed to establish a relationship with any entity or person that had a right, title, or interest in the trailer.