**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Oscar BETANCUR, Defendant–Appellant.**

**No. 93–4056.**

United States Court of Appeals,
Tenth Circuit.

May 3, 1994.

Bruce C. Lubeck (Richard D. Parry, U.S. Atty., D. Utah, with him on the brief), Asst. U.S. Atty., D. Utah, for plaintiff-appellee.

Deirdre A. Gorman, of Farr, Kaufman, Sullivan, Gorman, Jensen, Medsker and Perkins, Ogden, UT, for defendant-appellant.

Before LOGAN, BRORBY, Circuit Judges, and SEAY, District Judge. *

SEAY, District Judge.

Defendant-appellant, Oscar Betancur, was charged in a one-count indictment with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Betancur moved to suppress the admission of the cocaine found by a Sevier County Deputy Sheriff during a warrantless search of the vehicle Betancur was driving. Betancur claimed the cocaine was confiscated in violation of his Fourth Amendment rights. The district court denied the motion to suppress. Betancur entered a conditional plea of guilty under Federal Rule of Criminal Procedure 11(a)(2), thus preserving his right to bring this appeal challenging the district court's refusal to suppress the evidence. On appeal, Betancur contends the district court erred in finding: (1) the detention of Betancur and the vehicle was lawful, (2) Betancur does not have standing to contest the search of the vehicle, and (3) the warrantless search of the vehicle was

---

* The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

supported by probable cause. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.

On July 8, 1992, Betancur was traveling east on Interstate 70 in a 1991 Ford pickup truck. Sevier County Deputy Sheriff, Phil Barney, was traveling west on Interstate 70 when he fixed his radar on the pickup truck and clocked its speed at 74 miles per hour, which exceeded the 65 mile per hour speed limit. Barney turned his vehicle and followed Betancur. The pickup truck was eventually brought to a stop after Barney had paced it and pulled up next to it.[1] Just prior to stopping the pickup truck, Barney activated a video camera inside his patrol car. This video camera recorded the ensuing encounter between Betancur and Barney.

After both vehicles stopped on the shoulder of Interstate 70, Barney approached the pickup truck. Although it is not entirely clear from a viewing of the video tape, it appears that Barney paused momentarily to observe the rear wheel well before proceeding to the driver's side window to ask the occupant, Betancur, for identification and registration papers.[2] Although Betancur indicated that he did not speak English well, there was sufficient communication to allow Barney to receive a New York driver's license in Betancur's name and documents establishing that the pickup truck was registered to a Francisco Nava[3] of Tennessee. Barney questioned Betancur about Nava and the ownership of the pickup truck. Betancur responded by stating "Denver ... Memphis ... Chattanooga, Tennis", but otherwise did not provide a satisfactory answer regarding how he came into possession of the pickup truck or about Nava. Barney then asked

Betancur if he had any cocaine or marijuana and Betancur answered "no" several times. Barney next pointed to the bed of the pickup truck and asked "May I look in here"? Betancur answered "yes" and he exited the pickup truck and attempted to open the tool box which was located in the front portion of the bed near the rear window. As Betancur was attempting to open the tool box while in the bed of the pickup truck, Barney opened the tailgate and further examined the bed and the wheel well areas. Barney asked Betancur to step down from the bed and to stand near the rear of the pickup truck. Betancur stood down from the pickup truck, closed the tailgate, and seated himself in the driver's side of the pickup truck. Barney followed Betancur and asked for the keys to the pickup truck. After Betancur exited the pickup truck, Barney conducted a frisk of Betancur and placed Betancur to the rear of the pickup truck. Barney contacted dispatch and asked about a search warrant stating that there was a false compartment in the pickup truck. Barney asked dispatch to run a subject and vehicle check and requested a backup. Barney began to disassemble the rear portion of the pickup truck and, with the assistance of the backup officer, uncovered the false compartment which contained 100 kilograms of cocaine. Betancur was then placed in Barney's patrol vehicle and advised of his rights as he was being transported. As he was being advised of his rights, Betancur responded "no comprende".

At the suppression hearing before the district court, Barney testified that he has over twenty-five years of law enforcement experience on Utah highways. Barney further related the events as recorded in the video tape. With respect to Barney's initial observations of the pickup truck after it was

---

1. Barney testified that it took the better part of two miles to catch up with the pickup truck and that when he did, his speedometer registered just over 70 miles per hour.

2. In the video tape, Barney does not come fully into view until he is at the driver's side window. The video tape only provides for a partial observation of Barney before he arrives at the driver's side window. Notwithstanding this handicap, it is apparent to us that Barney did momentarily hesitate near the rear of the pickup truck. This

would be consistent with Barney's testimony that when he approached the pickup truck he noticed it was high, the bed bottom appeared lower than normal, and there was a bright area of fresh, clean undercoating by the rear wheel well.

3. It is unclear from the video tape and the transcript of the suppression hearing whether the proper name is Nava or Nova. We will use Nava when referencing the registered owner of the pickup truck.

stopped for speeding, he testified that as he approached the pickup truck he noticed it was high, similar to his own Ford four-wheel drive pickup truck. He thought this characteristic was unusual in that the pickup truck was a two-wheel drive vehicle. He also testified that as he approached the pickup truck, he noticed the pickup truck's bed bottom appeared lower than normal and that the rear wheel well area was bright with fresh, clean undercoating.

Betancur testified at the suppression hearing that he did not own the pickup truck and did not know the owner. Betancur further testified that he was being paid to drive the pickup truck from one place to another and that the person who gave him the pickup truck was "Tio".

## II.

On review of a denial of a motion to suppress, we must accept the district court's factual findings unless they are clearly erroneous. *United States v. Berryhill*, 880 F.2d 275, 280 (10th Cir.1989), *cert. denied*, 493 U.S. 1049, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990). The questions of standing and the reasonableness of a search under the Fourth Amendment are questions of law subject to de novo review. *United States v. Dodds*, 946 F.2d 726, 727 (10th Cir.1991); *United States v. Abreu*, 935 F.2d 1130, 1132 (10th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991).

Betancur initially argues that the district court erred in finding he lacked standing to contest the search of the pickup truck. The district court determined that Betancur did not have an expectation of privacy in the pickup truck and was therefore not in a position to challenge the legality of the search.

The issue of "standing" to challenge a search is not a concept which is separate and distinct from the merits of the underlying Fourth Amendment claim. The Supreme Court has recognized that the question of "standing" to challenge a search is "more properly subsumed under Fourth Amendment doctrine." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978); *see Abreu*, 935 F.2d at 1132; *United States v. Erwin*, 875 F.2d 268, 269–70 (10th Cir.1989). Given that "standing" is "invariably intertwined" with substantive Fourth Amendment analysis, the inquiry focuses on whether there has been a violation of the Fourth Amendment rights of the particular defendant who is seeking to exclude the evidence. *Rakas*, 439 U.S. at 140, 99 S.Ct. at 428–29. It is immaterial whether someone else's Fourth Amendment rights have been violated as "Fourth Amendment rights are personal and may not be asserted vicariously." *United States v. Skowronski*, 827 F.2d 1414, 1418 (10th Cir.1987). A defendant who seeks to exclude evidence carries the burden of establishing that his own Fourth Amendment rights have been violated as a result of a search. *Rakas*, 439 U.S. at 130 n. 1, 99 S.Ct. at 423–24 n. 1; *Abreu*, 935 F.2d at 1132; *Skowronski*, 827 F.2d at 1417.

In determining whether a search violated the Fourth Amendment rights of the defendant, the court considers two factors: whether the defendant has manifested a subjective expectation of privacy in the area searched and whether that expectation is one society would recognize as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Dodds*, 946 F.2d at 728; *Abreu*, 935 F.2d at 1132.

Applying these principles in *United States v. Arango*, 912 F.2d 441 (10th Cir.1990), *cert. denied*, 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991), we held that Arango, who was the driver of a pickup truck stopped for speeding by a Utah Highway Patrol Officer, did not have a reasonable expectation of privacy in the pickup truck because he did not establish that he was lawfully in possession of the pickup truck. After being stopped, Arango produced registration papers listing Walter A. or Linda A. McConaughy as the owners. Arango told the officer that the registered owner was a friend who had loaned him the pickup truck for a vacation in Denver. At the suppression hearing, however, Arango conceded that he obtained the pickup truck from Jesus Gonzalez, who was not the owner. Because Arango failed

to introduce any evidence establishing that Gonzalez obtained lawful possession of the pickup truck, we held that Arango did not sustain his burden of establishing a violation of his Fourth Amendment rights.

In *United States v. Erwin*, 875 F.2d 268 (10th Cir.1989), we applied the principles for determining whether a search violated one's Fourth Amendment rights and concluded that Erwin, who was a passenger in the vehicle which was searched, did not have a reasonable expectation of privacy in the vehicle. The testimony in *Erwin* suggested that the vehicle in which Erwin was a passenger had been loaned to the driver by Erwin. The owner of the vehicle, however, was a third-party by the name of Parmet. At the suppression hearing, Erwin did not claim ownership in the vehicle or the seized marijuana and did not introduce any evidence to establish his legitimate possession of the vehicle. Consequently, we held that Erwin's Fourth Amendment rights could not have been violated by the search as he failed to establish a legitimate expectation of privacy in the vehicle.

In this case, the district court concluded that Betancur did not have a reasonable expectation of privacy in the pickup truck. We agree with the district court's conclusion. Like the defendants in *Erwin* and *Arango*, Betancur failed to come forward with any evidence to establish that he either owned or was in lawful possession of the pickup truck. Betancur testified that he did not own the pickup truck and the registration papers indicated it was owned by Nava. While Betancur testified that someone named "Tio" gave him the pickup truck, there was no evidence presented which would establish ownership in "Tio" or a linkage between "Tio" and Nava. In sum, Betancur failed to carry his burden of establishing a reasonable expectation of privacy in the pickup truck by showing either ownership or lawful possession. *See Abreu*, 935 F.2d at 1132 (no expectation of privacy in trailer where defendant did not own trailer, there was no evidence that the owner authorized its use, and the evidence did not establish that defendant had an ownership, employ-ment, or agency relationship with anyone with an interest in the trailer); *Skowronski*, 827 F.2d at 1418 (no legitimate expectation of privacy to challenge search of vehicle's trunk where no relationship between defendant and vehicle driven by codefendant); *United States v. Erickson*, 732 F.2d 788, 790 (10th Cir.1984) (no legitimate expectation of privacy in aircraft where defendant failed to present credible evidence that he had authority from the registered owner of the aircraft to possess, use or fly the aircraft).

### III.

Even though we have found that Betancur has not established Fourth Amendment interests sufficient to challenge the search of the pickup truck, we must still consider whether the initial stop was proper. It is clear that Betancur has the right to challenge the stop of the pickup truck. *Erwin*, 875 F.2d at 270 ("It is beyond dispute that a vehicle's driver may challenge his traffic stop...."). If the stop was illegal, the seized cocaine may be subject to exclusion under the "fruit of the poison tree" doctrine. *Id.*, 875 F.2d at 269 n. 2.

Betancur claims the stop of the pickup truck for speeding was nothing more than a pretext to conduct further investigation for drugs. The standard in this circuit for determining whether a stop is pretextual was set out in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). In *Guzman*, we adopted an objective inquiry and held that in determining whether a traffic stop is unconstitutional the court should ask whether, under the same circumstances, a reasonable officer would have made the stop but for the existence of the improper motive. *Id.* at 1517. Using this standard, we conclude that the stop of the pickup truck was reasonable. The record is undisputed that the pickup truck was traveling 74 miles per hour in a 65 miles per hour speed zone. Under these circumstances, we find it reasonable for Barney to stop the vehicle and, further, we find that a reasonable officer would have stopped the vehicle even absent any improper mo-

tive.[4] *See Erwin,* 875 F.2d at 272 (it was reasonable for a New Mexico patrol officer to stop a vehicle traveling twelve miles over the speed limit).

Betancur also claims that his continued detention after the stop of the pickup truck was an unreasonable seizure in that it exceeded the scope of the reason for the initial stop. In particular, Betancur claims that Barney's questions concerning cocaine and marijuana, which were asked after Betancur had provided a license and registration papers, were not "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). We find nothing unreasonable in the temporary detention of Betancur to allow Barney to ask the drug-related questions. A temporary detention for questioning is justified when the officer has reasonable suspicion "of illegal transactions in drugs or of any other serious crime." *Florida v. Royer,* 460 U.S. 491, 498–499, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion); *Guzman,* 864 F.2d at 1519; *Arango,* 912 F.2d at 446–47. Here, Barney's detention of Betancur was supported by reasonable suspicion. After stopping the pickup truck and on his approach to the driver's side window, Barney observed what he believed, based on his law enforcement experience and his own personal knowledge of similar model pickup trucks, were irregularities in the appearance of the pickup truck. Based on these irregularities, Barney was of the belief that there was a false compartment under the bed of the pickup truck. Additionally, after Barney approached Betancur he was provided registration papers which did not establish Betancur as the owner of the pickup truck. Given the irregularities in the pickup truck and Betancur's inability to provide proof of lawful possession, we conclude the temporary detention of Betancur was proper. *United States v. Horn,* 970 F.2d 728, 731–32 (10th Cir.1992) (officer had reasonable suspicion for further questioning about drugs, guns or money in vehicle when defendant brought the vehicle to a stop in an unusual and provocative manner and presented the officer with suspicious ownership documents); *United States v. Turner,* 928 F.2d 956, 958–59 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991) (question about drugs or weapons justified where the vehicle was not registered to defendant or his passenger, defendant appeared nervous, defendant did not appear to be in the condition of one who claimed to be an auto mechanic, and defendant's attire and expensive compact disc collection were at odds with his asserted occupation); *Arango,* 912 F.2d at 446–47 (single inquiry related to contraband justified by defendant's inability to provide credible proof of lawful possession of vehicle and the fact that vehicle contained an inadequate amount of luggage for the two-week vacation claimed by defendant).[5]

We affirm the district court's denial of Betancur's motion to suppress.

---

4. Although the district court did not reach the pretext issue, given the undisputed testimony concerning the speed of the pickup truck and the objective nature of the pretext inquiry, we believe the proceedings below "resulted in a record of amply sufficient detail and depth from which the determination may be made." *See United States v. Lowe,* 999 F.2d 448, 451 n. 5 (10th Cir.1993) (quoting *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975)). Thus, we may conduct the pretext analysis and we need not remand for that purpose. *See Skowronski,* 827 F.2d at 1417 n. 2.

5. Since we previously determined that Betancur has not established a Fourth Amendment interest sufficient to challenge the search of the pickup truck, we are not required to assess the district court's determination that there was probable cause to support a warrantless search of the pickup truck. *Skowronski,* 827 F.2d at 1418 (no need to reach the merits of the warrantless search of a vehicle and its contents where defendant lacked a legitimate expectation of privacy in the area searched). Nor is there any issue with respect to "consent" by Betancur to search the pickup truck as the government does not attempt to justify the search on a consensual basis.