**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald A. KOPP, Defendant–Appellant.**

No. 94–3220.

United States Court of Appeals,
Tenth Circuit.

Jan. 23, 1995.

Larry C. Pace, Kansas City, KS, for defendant-appellant.

Robin D. Fowler, Asst. U.S. Atty., Dist. of Kansas (Randall K. Rathbun, U.S. Atty. and Leon J. Patton, Asst. U.S. Atty., Dist. of Kansas, with him on the brief) for plaintiff-appellee.

Before BRORBY and McWILLIAMS, Circuit Judges, and BURCIAGA,* Senior District Judge.

BURCIAGA, Senior District Judge.

Defendant appeals from the decision of the United States District Court for the District of Kansas denying his motion to suppress certain evidence seized during a traffic stop. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

On December 14, 1993, Defendant Ronald Kopp was driving a red pickup truck bearing California plates and pulling a U–Haul trailer on Interstate 70 about four miles west of Columbia, Missouri. Thomas Downey rode in the truck as a passenger. At about 3:45 p.m., Missouri Highway Patrol Sergeant McGrail determined that Defendant was driving approximately 74 miles per hour in a 65 mile-per-hour zone. Sergeant McGrail signalled Defendant to pull over and Defendant complied. Approaching the truck, Sergeant McGrail observed a very worn sofa through the camper shell of the pickup. Defendant exited the vehicle and McGrail informed him that he was speeding and asked to see his driver's license. Defendant gave McGrail a California driver's license which McGrail determined had been suspended due to a DWI conviction.

While waiting for the information regarding Defendant's driver's license, McGrail asked Defendant some questions. Defendant hesitated when answering the questions, was shaking and fidgeting, and evaded making

eye contact. When asked where he was going, Defendant indicated that he was taking some furniture to a friend in Shreveport. McGrail inquired whether Defendant meant Shreveport, Louisiana, whereupon Defendant indicated that he thought they were going to North Carolina but he did not know exactly where in that state. Defendant stated that he intended to stay in North Carolina until after Christmas.

After McGrail issued Defendant a warning for speeding and a citation for driving without a valid license, he approached Downey to determine whether Downey had a valid driver's license and could drive the truck. McGrail asked Downey to sit in the patrol car while he checked Downey's Missouri driver's license. At about 4:05 p.m., McGrail determined the license to be valid. During this time, McGrail asked Downey the same questions he had asked Defendant. Downey told McGrail that he and Defendant were going to North Carolina to take some furniture to some friends near Charlotte, and that Downey might look for work while there. However, Downey indicated that if he did not find a job, he and Defendant would only stay in North Carolina two or three days and would return to California before Christmas. Downey first stated that he had known Defendant for about six months and had lived in California for four or five months. He later told McGrail that he had known Defendant for longer than six months and had been in California for two years.

Downey subsequently produced a rental agreement in his name for the U–Haul trailer. McGrail asked Downey for permission to search the U–Haul and Downey declined. McGrail then called for another highway patrol officer to bring a drug dog to the scene. McGrail informed Defendant and Downey that he had called for a drug dog and that the dog would arrive after a short delay. He did not advise them that they were free to go, and in fact testified that he believed they were not free to go because he had a reasonable suspicion upon which to detain them. The drug dog arrived at about 4:37 p.m. and

* Honorable Juan C. Burciaga, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation.

alerted to the U–Haul. Downey gave McGrail the key to the trailer and McGrail opened it. The trailer smelled strongly of marijuana and contained, *inter alia,* a black bale-shaped garbage bag. McGrail closed the U–Haul, placed Defendant and Downey under arrest, and transported Defendant to the Columbia police station while Downey followed in the truck. An inventory search revealed about 450 pounds of marijuana in the U–Haul.

Defendant moved the trial court to suppress the marijuana seized from the U–Haul on the grounds that McGrail's continued detention of Defendant and Downey after he determined that Downey had a valid driver's license was without reasonable suspicion and violated the Fourth Amendment to the United States Constitution. U.S. Const. amend. IV. The trial court denied Defendant's motion to suppress in a detailed opinion filed April 14, 1994. Defendant pled guilty to violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, conditionally upon appeal of the trial court's denial of his motion to suppress. *See* Fed.R.Crim.P. 11(a)(2). Defendant was sentenced to 70 months' imprisonment on July 5, 1994 and timely filed a notice of appeal on July 8, 1994.

Defendant argues that the trial court erred when it denied his motion to suppress the marijuana seized from the U–Haul trailer. He does not contend that McGrail's initial stop violated his constitutional rights. However, he does allege that McGrail's continued detention of himself and Downey after approximately 4:05 p.m., when McGrail determined that Downey had a valid driver's license, was unsupported by reasonable suspicion and violated Defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment. Defendant asserts that the marijuana McGrail discovered was the fruit of the illegal detention and must be suppressed on that ground, and further argues that neither he nor Downey voluntarily consented to the search of the U–Haul so as to purge the taint from the illegal detention.

In reviewing Defendant's Fourth Amendment suppression claim, we will uphold the factual findings of the trial court unless they are clearly erroneous. *United States v. Fernandez,* 18 F.3d 874, 876 (10th Cir.1994). However, the ultimate determination of the reasonableness of a search or seizure under the Fourth Amendment is a question of law which we review *de novo. Id.*

## I.

■ We first consider whether Defendant has standing under the Fourth Amendment to contest the search of the U–Haul trailer where the marijuana was found. In this context, "the [standing] inquiry focuses on whether there has been a violation of the Fourth Amendment rights of the particular defendant who is seeking to exclude the evidence." *United States v. Betancur,* 24 F.3d 73, 76 (10th Cir.1994) (citing *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978)). To persuade us that his Fourth Amendment rights have been violated, Defendant must demonstrate, first, that he has manifested a subjective expectation of privacy in the area searched, and second, that his expectation is one that society would recognize as objectively reasonable. *Id.* (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)).

■ We need not consider whether Defendant manifested a subjective expectation of privacy in the U–Haul trailer because we find that even if Defendant had such an expectation, it is not one that society would recognize as objectively reasonable. First, we consider Defendant's privacy interests in the U–Haul separately from his interests in the pickup truck to which the U–Haul was attached on the authority of *United States v. Abreu,* 935 F.2d 1130 (10th Cir.1991). In *Abreu,* this Court found that the defendant had no privacy interest in the trailer searched, despite the fact that the trailer was attached to a tractor the defendant owned. *Id.* at 1133. Neither the defendant nor his company owned or leased the trailer. *Id.* The Court stated that it was not required to consider the tractor and trailer as one unit despite "their physical linkage and alleged functional inseparability. Although the linkage is one factor tending to support a legitimate expectation of privacy, it is insufficient

when we examine, as we must, all the facts and circumstances in this case." *Id.*

Next, while Defendant did own the pickup truck, he did not own the U–Haul trailer in which the marijuana was found, nor did he rent it. Rather, passenger Downey rented the U–Haul, carried the key to it, and gave the key to McGrail when asked. Inasmuch as Defendant neither owned, rented, nor controlled access to the U–Haul, his relationship to the trailer is analogous to a passenger's relationship to the car that another has rented, and this Court has held that such a person has no privacy interest in the rented car. *United States v. Lewis,* 24 F.3d 79, 81 (10th Cir.1994); *United States v. Roper,* 918 F.2d 885, 887–88 (10th Cir.1990). We therefore find that Defendant does not have standing under the Fourth Amendment to contest the search of the U–Haul from which the police seized the marijuana he seeks to suppress.

■ Nevertheless, Defendant, as owner and driver of the pickup truck, unquestionably has standing to contest the stop of the truck and the continued detention of the truck and of his person. *Betancur,* 24 F.3d at 77; *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989). If the continued detention of Defendant's person and truck was "unlawful, the 'fruit of the poisonous tree' doctrine might dictate exclusion of the evidence discovered during the search." *Erwin,* 875 F.2d at 272. Thus, we must now consider whether the continued detention of Defendant's person and truck constituted an unreasonable seizure under the Fourth Amendment.

## II.

As noted above, Defendant does not contend that McGrail's initial stop of the truck was unreasonable. Rather, Defendant asserts that the seizure became unlawful when McGrail continued to detain Defendant's person and truck beyond the time necessary to issue a citation to Defendant and to ascertain that Downey could legally drive the truck. The parties do not dispute that the continued detention was in the nature of a *Terry* stop, a brief, investigative detention that must be justified by "specific, articulable facts which,

taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *United States v. Pena,* 920 F.2d 1509, 1514 (10th Cir.1990) (quoting *United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir.1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968))). However, the parties vigorously contest whether reasonable suspicion of illegal activity justified the continued detention.

Defendant calls our attention to two cases in which this Court found that reasonable suspicion did not justify the seizure in question. *See Fernandez,* 18 F.3d at 874; *United States v. Guzman,* 864 F.2d 1512 (10th Cir. 1988). In *Fernandez,* the Court found that the police officer did not have reasonable suspicion to detain the defendant, where the defendant pulled into the emergency lane when the officer moved beside and paced him, where the defendant was unusually nervous, and where his passenger was startled and stiff when he awoke and saw the officer. 18 F.3d at 878–80. The Court found significant that the defendant and his passenger gave "a consistent and very plausible explanation of their travel," and that the defendant had a valid driver's license and registration in his own name. *Id.* at 878.

Likewise, in *Guzman* the Court found that the police officer did not have a reasonable suspicion to detain the defendant where the defendant's wife looked sick, seemed apprehensive, was sweating heavily, and did not look the officer in the eye, and where the defendant and his wife carried $5,000 in cash. 864 F.2d at 1520. Regarding the defendant's wife's demeanor, the Court noted that the wife was pregnant and sitting in a car with the engine shut off in the middle of a desert. *Id.* The Court characterized the officer's belief that the defendant and his wife could not have saved $5,000 for a vacation in Las Vegas as merely a "hunch." *Id.*

■ We find these cases distinguishable and conclude that reasonable suspicion justified McGrail's detention of Defendant from the time McGrail determined that Downey had a valid license to the arrival of the drug dog. Several specific, articulable facts, taken together with rational inferences from them, reasonably supported McGrail's continued detention of Defendant. First, McGrail did not find it plausible that Defendant would

drive from California to North Carolina merely to take a very dilapidated sofa to some friends. Second, McGrail found suspicious Defendant's reference to "Shreveport" and his uncertainty as to where in North Carolina he was going. Third, McGrail noted that Defendant's story was not consistent with Downey's, in that Defendant said they intended to return to California after Christmas but Downey said they intended to return before Christmas, within a few days of December 14. Fourth, Downey gave inconsistent responses concerning how long he had known Defendant and how long he had been living in California. Finally, McGrail noted Defendant's hesitancy in answering questions and his unusual nervousness.

Defendant seems to rely upon *Fernandez* and *Guzman* because the Court in those cases found no reasonable suspicion despite the fact that the defendants or their passengers were nervous, as was Defendant in the present matter. However, Defendant overlooks the dearth of other factors raising reasonable suspicion in *Fernandez* and *Guzman*. In *Fernandez*, the only articulable fact raising reasonable suspicion aside from the defendant's and his passenger's nervousness was the defendant's improper lane travel. In *Guzman*, the only suspicious fact aside from the defendant's wife's nervousness was the couple's possession of $5,000, which they claimed they had saved for a trip to Las Vegas. In the present case, however, several factors other than Defendant's nervousness to support McGrail's reasonable suspicion.

Defendant also overlooks the fact that the defendants and their passengers in *Fernandez* and *Guzman* gave consistent, plausible accounts of where they were going and why. *Fernandez*, 18 F.3d at 878; *Guzman*, 864 F.2d at 1514. Conversely, Defendant's explanation of his travel plans and purpose was not plausible, nor was it completely consistent with the explanation his passenger gave. In addition, his passenger's responses to McGrail's questions were internally inconsistent.

In *United States v. Soto*, 988 F.2d 1548 (10th Cir.1993), a more apposite decision, the Court found that reasonable suspicion justified the police officer's continued detention of the defendant where the defendant could not provide a general address for the uncle who had allegedly loaned him the car he was driving, and where the defendant appeared "panicky." *Id.* at 1554. McGrail had at least as much reason to suspect Defendant of criminal activity as did the officer in *Soto*. Not only was Defendant very nervous and unable to provide even a general address for his destination, like the defendant in *Soto*, but also Defendant's and Downey's stories were implausible and inconsistent. Thus, this Court's caselaw amply supports our finding that reasonable suspicion justified McGrail's continued detention of Defendant and that McGrail did not violate Defendant's Fourth Amendment rights.[1] *See also United States v. Turner*, 928 F.2d 956, 959 (10th Cir.1991) (reasonable suspicion where defendant claimed to be mechanic but had clean, well-manicured hands, expensive clothes, and large CD collection, where car was not registered to defendant or passenger, and where defendant was increasingly nervous); *Pena*, 920 F.2d at 1514 (reasonable suspicion where defendant had Illinois license but drove car with California plates, could not provide registration, and gave inconsistent answers regarding his destination, and where trunk lock was punched out).

Thus, because Defendant has no standing to contest the search of the U–Haul trailer in which the evidence he seeks to suppress was found, and because reasonable suspicion justified the continued detention of Defendant's person and truck after McGrail had ascertained that passenger Downey could legally drive the truck, we find that the district court correctly denied Defendant's motion to suppress and we affirm.

---

1. We note that McGrail detained Defendant for no longer than was necessary to call a drug dog to the scene and to thus quickly confirm or dispel his reasonable suspicions. *See United States v. Sharpe*, 470 U.S. 675, 686–88, 105 S.Ct. 1568, 1575–77, 84 L.Ed.2d 605 (1985) (upholding 20 minute detention where police "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").