**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ADAM JOSEPH SIEREN,

      Defendant-Appellant.

No. 02-8112
(D.C. No. 02-CR-50-J)
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE** and **LUCERO,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Adam Joseph Sieren appeals the district court's denial of his motion to suppress evidence discovered during a search of his vehicle and his subsequent statements

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to authorities.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Trooper Chatfield was on routine traffic patrol on Interstate 80 near Cheyenne, Wyoming, when his patrol car radar unit indicated a vehicle was exceeding the speed limit.  As Chatfield followed the vehicle, it crossed the center line twice.  He activated the patrol car overhead lights to stop the vehicle.  A video camera mounted in the patrol car recorded the stop.

As the vehicle slowed, Chatfield observed the passenger turn and appear to hide something in the back seat area.  Chatfield approached the passenger side of the vehicle and the passenger appeared to be asleep.  Sieren was driving the vehicle and he produced the vehicle registration in his name, but he did not have a current driver's license.  He stated that another officer had taken his license during an earlier traffic stop.  Chatfield told Sieren he would issue a warning and he asked Sieren to accompany him to the patrol car.

In the patrol car, Chatfield verified that Sieren had a valid license.  Sieren told Chatfield that he and his brother had been near Lake Tahoe, Nevada, visiting relatives and were returning to Des Moines, Iowa.  Chatfield noted that Sieren was very nervous, "constantly moving his hands on his legs and touching them together and kept really moving forward and back, wasn't really able to sit still," Aplt. App. at 20, and that he "seemed to get more nervous as the stop went on."  Id. at 21.  Chatfield issued a warning

2

for the speeding violation, returned Sieren's paperwork, and told him he was free to leave. As Sieren got out of the patrol car, Chatfield asked if he had drugs in his vehicle, or if the drug detection dog in the patrol car would alert to drugs if led around the vehicle. Sieren answered "no" to both questions and refused to consent to a search of the vehicle.

Chatfield informed Sieren that he intended to have his dog sniff the exterior of the vehicle for drug odors. The dog alerted at the rear of the vehicle. Chatfield opened the rear of Sieren's vehicle and the dog alerted again inside the vehicle. Marijuana, cocaine, and Ecstacy were found in the spare tire and inside the vehicle. A black tray containing a large amount of marijuana residue was found in a compartment behind the passenger's seat. Sieren and his brother were arrested and Sieren made incriminating statements during a subsequent interrogation.

Sieren was indicted for possession with intent to distribute (1) more than 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) less than 50 kilograms of marijuana, in violation of § 841(a)(1) and (b)(1)(D); and (3) approximately 100 tablets of Ecstacy, in violation of § 841(a)(1) and (b)(1)(C). Sieren moved to suppress the seized evidence and his statements because Chatfield lacked an objectively reasonable and articulable suspicion of criminal activity at the time of the seizure. The court denied the motion. Sieren entered a conditional plea of guilty to possession of cocaine with intent to distribute, reserving the right to appeal the denial of his motion to suppress.

II.

On appeal, Sieren argues that once Chatfield terminated the traffic stop by returning his paperwork, he lacked an objectively reasonable and articulable suspicion of criminal activity necessary to justify his continued detention.

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. Id.

A routine traffic stop constitutes an investigative detention and is examined under the principles announced in Terry v. Ohio, 392 U.S. 1, 19-20 (1968). Under Terry, we first determine whether the stop was justified at its inception. Sieren does not challenge the validity of the initial stop. Under the second prong of Terry, we determine whether Chatfield's conduct during the detention was reasonably related in scope to the circumstances which justified the initial interference. The government bears the burden of showing that an officer possessed objectively reasonable and articulable suspicion. See United States v. Carhee, 27 F.3d 1493, 1496, n.2 (10th Cir. 1994). "When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting

4

legal wrongdoing." United States v. Arvizu, 122 S. Ct. 744, 750 (2002).

The government contends the following facts formed the basis for suspicion: (1) the passenger's attempt to hide something in the back seat, (2) the passenger pretending to be asleep when the vehicle was stopped, (3) Sieren's extreme and increased nervousness during the stop, and (4) Sieren's stated destination.[1] The district court concluded that facts 3 and 4 standing alone were not persuasive, but that based on a totality of the circumstances, Chatfield had an objectively reasonable and articulable suspicion to lengthen the stop. All of the circumstances giving rise to these facts occurred prior to Sieren's refusal to consent to a search of the vehicle.

Based upon the totality of the circumstances, we agree with the district court that Chatfield possessed the requisite reasonable suspicion to detain Sieren. The detention was brief as no more than twenty minutes elapsed from the time of the initial stop to the time the drug detection dog alerted to the drugs in the vehicle. See United States v. Williams, 271 F.3d 1262, 1271 (10th Cir. 2001) (finding fifteen-minute wait for canine unit was reasonable); United States v. Villa-Chaparro, 115 F.3d 797, 802-03 (10th Cir. 1997) (finding thirty-eight-minute wait for canine unit was reasonable in view of officer's reasonable suspicion). The officer testified that Sieren's nervousness seemed to increase during the stop. See Williams, 271 F.3d at 1269 (upholding district court's finding that

---

[1] Chatfield testified that, from his experience, Des Moines was "the main destination point for the drugs that travel across I-80." Aplt. App. at 20.

5

defendant's "nervousness exceeded that of the average citizen during a routine traffic stop" because defendant's "nervousness did not dissipate throughout the entire stop"). The passenger's behavior before and after the stop, combined with Sieren's increasing level of nervousness during the traffic stop, give rise to a reasonable suspicion of criminal activity.  See, e.g., Williams, 271 F.3d at 1271 (holding under the totality of the circumstances, the officer had sufficient reasonable suspicion to detain defendant to perform a canine drug search);  United States v. Soto Cervantes, 138 F.3d 1319, 1324 (10th Cir. 1998) (holding under the totality of the circumstances, the officers possessed the requisite reasonable suspicion to detain defendant); United States v. Hunnicutt, 135 F.3d 1345, 1349-50 (10th Cir. 1998) (holding under the totality of the circumstances, defendant's further detention and questioning "were supported by a reasonable articulable suspicion of illegal activity"); United States v. Kopp, 45 F.3d 1450, 1454 (10th Cir. 1995) (holding several specific articulable facts, taken together with rational inferences from them, reasonably supported defendant's continued detention).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

6