**UNITED STATES COURT OF APPEALS**
**Filed 9/20/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS CARAVEO-LEDEZMA,

Defendant - Appellant.

No. 95-1471
(D. Colo.)
(D.Ct. No. 95-CR-71-S)

**ORDER AND JUDGMENT***

Before TACHA, BALDOCK, and EBEL, Circuit Judges.

On September 23, 1995, Jesus Caraveo-Ledezma was indicted with one count of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The defendant filed a motion to suppress the cocaine based upon an assertion that the defendant's vehicle was stopped without probable cause and without reasonable suspicion. After the district court denied the motion, the defendant entered a guilty plea, conditioned upon his right to appeal the district court's denial of his motion to suppress. The defendant now appeals. We

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.  BACKGROUND

On January 22, 1994, a white Dodge Spirit with Arizona license plates passed Colorado State Trooper Russell Wise as he was traveling northbound on Interstate 25 in El Paso County, Colorado.  The Dodge carried the defendant and one other man in front and one woman in back.  After Trooper Wise observed the car cross the center line on two occasions, he stopped the car and approached the vehicle.

When Trooper Wise asked the driver for his license, the driver did not have one but instead provided Trooper Wise with an identification card.  Trooper Wise then asked the female passenger and the defendant for identification.  The defendant provided a Mexican driver's license and the female provided a Colorado temporary driver's permit.

Trooper Wise then asked a series of questions about the origin, destination, and purpose of the trip.  The defendant, who was the only person in the car who spoke English, told Trooper Wise that they had been traveling all night from Phoenix to Denver and planned to return to Phoenix in a few days.  When the defendant handed Trooper Wise a rental agreement, he noticed that none of the occupants of the vehicle were authorized drivers.  Trooper Wise then learned that the person who rented the vehicle was the mother of the defendant's wife.

After returning to his car, Trooper Wise conducted a computer search which indicated that the female passenger had a valid driving permit. Trooper Wise asked the driver not to drive because he did not have a license. The female passenger then assumed the driver's seat because she had a valid license. Because Trooper Wise decided the weaving was the result of fatigue, he only issue a verbal warning to the trio.

After the occupants had switched places, Trooper Wise asked the male who had been driving if they were carrying any drugs, cash, or weapons in the vehicle. The defendant interceded and replied in the negative. When Trooper Wise asked about the drugs, however, the defendant first turned away from the officer and looked to the female driver before replying.

Throughout the questioning, Trooper Wise noticed that the defendant was very nervous and tended to have quick and jerky physical movements. He also thought that the trio's story was atypical, especially because none of them were authorized to drive the car. Accordingly, Wise asked if they would mind if he searched the vehicle. The defendant answered "okay" while his male companion nodded his head. The male who had been driving the car executed a Spanish consent-to-search form.

When Trooper Wise searched the trunk, he observed a small shoe box between the taillight and a cover used to protect the wiring. The box contained a

brick of white powder wrapped in cellophane which the officer suspected was cocaine.

Trooper Wise arrested the trio and then took them to the state highway patrol office in Colorado Springs. After waiving his <u>Miranda</u> rights, the defendant told the agents that he had borrowed the car from his wife's mother in Phoenix, Arizona. The mother had rented the car from Thrifty Car Rental. The mother, however, did not know that the defendant had taken the car from Arizona to Colorado. Apparently, his wife had only given the defendant permission to take the car to get a six-pack of beer.

## II. DISCUSSION

### A. Standing

In reviewing a defendant's Fourth Amendment claims, the appellate court should uphold the factual findings of the district court unless they are clearly erroneous. <u>United States v. Fernandez</u>, 18 F.3d 874, 876 (10th Cir. 1994). Whether a defendant has standing to challenge a search, however, is a legal question subject to de novo review. <u>United States v. Betancur</u>, 24 F.3d 73, 76 (10th Cir. 1994).

#### 1. Standing to Challenge the Search

The personal nature of Fourth Amendment rights imposes on the party seeking to suppress evidence the burden of "'adducing facts at the suppression

hearing indicating that [his] own [Fourth Amendment] rights were violated by the challenged search.'" Eylicio-Montoya, 18 F.3d 845, 850 (10th Cir. 1994) (quoting United States v. Skowronski, 827 F.2d 1414, 1417 (10th Cir.1987)). Two factors are relevant:  (1) whether a party has manifested a subjective expectation of privacy in the area searched and (2) whether society is prepared to recognize that expectation as reasonable.  Id.; United  States v. Erwin, 875 F.2d 268, 270 (10th Cir.1989).

We agree with the district court that the defendant failed to show that he had either a subjective or reasonable expectation of privacy in the car.  The mere fact an individual has physical possession of a vehicle does not necessarily give that person a reasonable expectation of privacy in it.  United States v. Arango, 912 F.2d 441, 444 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991).  Rather, he has no reasonable expectation of privacy unless he proves he had lawful ownership or possession of the vehicle at the time of the search.  Betancur,  24 F.3d at 76-77.

The defendant did not receive permission to drive the car from the owner or the renter.  He only had permission to use the car from the renter's daughter. Moreover, that permission was limited to picking up a six-pack of beer in Phoenix.  Thus, we conclude that the defendant had no standing to challenge the search of the vehicle.

## 2. Standing to Challenge the Arrest

Our conclusion that the defendant lacks standing to challenge the search of the Dodge does not end our inquiry. In his motion to suppress, the defendant challenged not only the search but also the initial stop and subsequent arrest. Under our prior decisions, a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds even though, when the seizure occurs, he has no possessory or ownership interest in either the vehicle in which he is riding or in its contents. See United States v. Eylicio-Montoya, 70 F.3d 1158, 1163-64 (10th Cir. 1995). A passenger does not relinquish his Fourth Amendment protection from unlawful seizures merely because he chooses to ride in a vehicle in which he has no possessory or proprietary interest. See Erwin, 875 F.2d at 270. Thus, we must determine whether the defendant was arrested in violation of the Fourth Amendment.

## B. Merits of The Fourth Amendment Claim

In reviewing a ruling on a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous. United States v. McSwain, 29 F.3d 558, 560 (10th Cir. 1994). The credibility of witnesses and the weight given to the evidence at the suppression hearing, as well as the resulting inferences and conclusions, are matters for the trial judge. Moreover, we view the evidence in the light most favorable to the prevailing party. Id. at 560. The ultimate

determination of whether the challenged conduct is reasonable under the Fourth Amendment, however, is a legal question that we review de novo. Id. at 561.

We conclude that the defendant was not arrested in violation of the Fourth Amendment. In this case, the defendant does not challenge the initial stop made for the purpose of investigating a traveling violation. Instead, the defendant only challenges the continued questioning and subsequent search after the initial investigation was completed.

An investigative stop must be limited in duration to be reasonable. Once the purpose of the stop has been accomplished, the occupants "must be allowed to proceed on [their] way, without being subject to further delay by police for additional questioning." United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988). Questioning may continue, however, if the person voluntarily consents to it, United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994), or when the officer has reasonable suspicion that the person is engaging in illegal activity, United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993).

In this case, the traffic stop developed into a consensual situation. Trooper Wise gave back the identification materials of the defendant and the two other occupants. He then asked the woman to drive. After all of the occupants changed places, Trooper Wise gave them a verbal warning. The trooper moved to the passenger side of the car. At that point, he asked about the drugs. There was no

evidence of coercion or intimidation. When the officer received the defendant's verbal consent and his male companion's written consent to search the vehicle, neither individual limited the terms of the search in any way. We conclude that based on all of the circumstances, a person in such a situation would reasonably have believed that he was free to leave. United States v. Werking, 915 F.2d 1404, 1407-10 (10th Cir. 1990). Thus, we hold that this was a valid voluntary consensual encounter consistent with the Fourth Amendment. Questioning may also continue when the officer has reasonable suspicion that the person is engaging in an illegal activity. United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993). The record reveals a number of suspicious events which together support the questioning by Trooper Wise. The driver of the car did not have a valid license, and the rental paperwork indicated that none of the occupants were authorized to drive the car. Moreover, Trooper Wise thought that the defendant's nervousness, as opposed to the driver's nervousness, was unusual. Finally, when the Trooper asked the male who had been driving questions about drugs, the defendant interjected after looking at his female companion. Thus, we hold that Trooper Wise had reasonable suspicion to continue questioning the defendant and his companions. Accordingly, we AFFIRM the district court's denial of the motion to suppress.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge